Zimmerman, J.
 

 Part Second, Title IX, Division III, of the General Code of Ohio, is captioned “Insurance Companies.” Subdivision II, of Division III, relates to “Insurance Upon Property and Against Certain Contingencies, ’ ’ and Chapter I, of Subdivision II, contains the “General Provisions” pertaining to insurance of that class.
 

 Chapter 1 includes Sections 9510 and 9561, General Code. Section 9510 follows immediately after the heading “Insurance Authorized,” and provides:
 

 “A company may be organized or admitted under this chapter to— * * * guarantee the fidelity of persons holding places of public or private trust, who are required to, or, in their trust capacity do receive, hold, control, disburse public or private moneys or property * * #.”
 

 It is therefore plain that guaranty and surety companies are within the general classification of “Insurance Companies.”
 

 Tracing the history of Section 9561, General Code, restricted to foreign insurance companies, through 75 Ohio Laws, 572 (1878), and 97 Ohio Laws, 159 (1904), it is apparent that it was intended to cover “Foreign insurance companies other than life.” Both acts are so entitled.
 

 Section 9561, General Code, reads as follows:
 

 “Any such company desiring to transact business by an agent in this state, shall file with the superintendent of insurance a written instrument, duly signed and sealed, authorizing any of its agents in Ohio to acknowledge service of process therein for and in behalf of the company, consenting that service of process, mesne or final, upon any agent, shall be as valid as if served upon the company according to the laws of this
 
 *542
 
 or any other state or country, and waiving all claim or right of error by reason of such acknowledgment of service; also, consenting that suit may be brought against it in the county where the property insured was situated, or was insured, or the application for insurance taken, and that service of process made therein by the sheriff of such county, by sending a copy thereof by mail, addressed to the company at the place of its principal office located in the state where it was organized, or, if it is a foreign company, to it at the-place of its principal office in the United States, at least thirty days prior to taking judgment in such suit, shall be as valid as if personally made upon the company according to the laws of this state; or any other state or government; also, if suit be brought against it after it ceases to do business in this state, and there is no agent of the company in the county in which it is brought upon whom service of process can be made that service upon it may be had by the sheriff sending a copy thereof, so mailed, and within such time. But the sheriff’s return must show the time and manner of such service.”
 

 The quoted section embraces the only reference to service of process upon foreign insurance companies, including those engaged in the surety and guaranty business, within the confines of such Chapter 1.
 

 Among the stipulations in the “Agreed Statement of Facts” are the following:
 

 “1. That the defendant, The Title Guaranty & Surety Company, is, and at all times mentioned in the petition was, a corporation, organized and existing under and by virtue of the laws of the state of Pennsylvania.
 

 “2. That said company is, and at all times mentioned in said petition, was, organized for the purpose of and engaged in the business of guaranteeing the fidelity of persons holding places of public or private
 
 *543
 
 trust, who are required to, or in their trust capacity-do, receive, hold, control or disburse public or private monies and of executing and guaranteeing bonds and undertakings required or permitted in all actions or proceedings or by law allowed.
 

 “3. That on the fourteenth day of July, 1904, said company registered itself with the superintendent of insurance of the state of Ohio and qualified under the laws of Ohio for the purpose of doing business in the state of Ohio. In accordance with Section 9561 of the General Code of Ohio, it filed with the superintendent of insurance of the state of Ohio the instrument required of it by said Section 9561 and each year thereafter filed such instrument to and including the year 1913 and again filed such instrument with the superintendent of insurance in the year 1916 but no such instruments were filed by it with the superintendent of insurance thereafter. A copy of said instrument filed in the year 1913 is hereto attached, marked ‘Exhibit A’ and made a part hereof, and said instruments filed in the other years above stated were identical with said Exhibit A with the exception of the respective dates of the same.
 

 “4. That said company on November 15, 1913, ceased doing business and discontinued its offices and cancelled its agencies in the state of Ohio, without filing any formal notice of withdrawal with the superintendent of insurance. * * *
 

 ‘ ‘ 7. That said company did not at any time take any procedure to qualify as a foreign corporation in the office of the secretary of state.”
 

 “Exhibit A,” referred to, shows almost a verbatim compliance with Section 9561, General Code. The name of plaintiff in error is given, with the number and street of' its principal office in Scranton, Pennsylvania.
 

 There can be no doubt of the efficacy and binding force of the waivers and consents filed under Section 9561, General Code, by foreign insurance companies.
 

 
 *544
 
 The right of a state to exclude foreign corporations from doing business within its borders is well established. In admitting such corporations, the state may therefore prescribe by statute the conditions under which they may enter and do business. Accordingly, by coming into the state and subjecting themselves to the imposed conditions, such corporations cannot subsequently escape or evade the consequences. 10 Ohio Jurisprudence, Section 908, page 1182;
 
 Ouelette
 
 v.
 
 City of New York Ins. Co.,
 
 133 Me., 149, 152, 174 A, 462, 463.
 

 Plaintiff in error presents no exception to this general rule, and when it came into this state to do business and filed the consents and waivers with the superintendent of insurance under Section 9561, General Code, it was bound thereby so long as it had outstanding obligations or liabilities which were incurred during its transaction of business in Ohio. See Volume 2, Couch Cyclopedia of Insurance Law, Section 553, page 1761.
 

 Any cause of action against plaintiff in error on the bonds in question accrued on July 13, 1917, when the final account of S. C. Daniel, guardian, was settled by the Probate Court, and a sum certain was found to be due and owing from him.
 
 Newton
 
 v.
 
 Hammond,
 
 38 Ohio St., 430.
 

 Defendant in error filed her petition on November 12, 1920. The only process issued for plaintiff in error upon which return was made prior to 1934 was that in 1924, showing service upon the Secretary of State. Was such service of any effect?
 

 It is contended by counsel for defendant in error that it was good under Section 181, General Code. Sections 178 to 191, inclusive, General Code, repealed in 1931, pertained to the requirements to be met and the conditions to be performed by
 
 foreign corporations in general
 
 which desired to come into Ohio to do business and matters incidental thereto.
 

 
 *545
 
 From a reading of Sections 178 and 188, General Code, it would seem clear that “foreign banking, insurance, building and loan, or bond investment corporations” were not within the contemplation of these statutes, the reason being that they were controlled in such particulars by other statutes of specific application. Section 179, General Code, stipulated various steps to be taken by a foreign corporation before it should be entitled to a certificate from the Secretary of State to transact business in Ohio, among them being the designation of a person within the state upon whom process might be served. Then followed Section 181, General Code, providing that when such person so designated died or removed from the principal place of business of the corporation within the state, the corporation should within thirty days appoint another, and if it failed to do so its authority to do business should be revoked and “process against such corporation in an action upon the liability incurred within this state before such revocation may be served upon the secretary of state after such death or removal and before another designation is made.”
 

 Plaintiff in error never had anything to do with the Secretary of State. There was no necessity therefor; consequently the office of the Secretary of State contained no records or information concerning plaintiff in error. Its dealings were entirely with the Superintendent of Insurance, in accordance with the applicable statutes.
 

 The “Agreed Statement of Facts” demonstrates that it qualified to do business in Ohio in compliance with the specific statutes on that subject, inclusive of the one covering service of process.
 

 In such a situation the service on the Secretary of State was without avail, and the general rule of law is pertinent that where the mode of service, or service upon a particular person, is wholly unauthorized the
 
 *546
 
 service is a nullity, and any judgment entered thereon is void. 32 Ohio Jurisprudence, Section 98, page 491.
 

 Applicable to the present case is the principle announced in
 
 Rehm
 
 v.
 
 German Ins. & Sav. Inst.,
 
 125 Ind., 135, 25 N. E., 173, to the effect that a statute which provides that no foreign insurance company shall do business in Indiana until it has filed with the Auditor of State its consent that process against it may be served upon any one of its authorized agents in the state, and, in the absence of such agent, upon the Auditor of State, excepts foreign insurance companies from another statute regulating service of process on foreign corporations in general.
 

 And compare Vol. 2, Couch Cyclopedia of Insurance Law, Section 553, page 1760.
 

 It is to be noted, then, that from the time the petition was filed in November of 1920, naming plaintiff in error as a defendant, until November of 1934, there was no valid service of process.
 

 As a foreign corporation was it privileged to take advantage of Section 11226, General Code, stating that u An action on the * * * undertaking of [a] * * * guardian
 
 * * *
 
 shall be brought within ten years after the cause thereof accrued”?
 

 Plaintiff in error having complied with Section 9561, General Code, in every respect, was available for service of process when the cause of action accrued and at all times thereafter. We find ourselves in agreement with the widely accepted tenet that if a foreign corporation has placed itself in such position that it may be served with process, it may avail itself of the statute of limitations when sued. 14A Corpus Juris, Section 4123, page 1402.
 

 As a fair proposition the test of the running of the statute should be the liability of the party invoking its bar to the service of process during the whole of the period prescribed. If such process can be served dur
 
 *547
 
 ing that time, and a personal judgment obtained, such party is not “out of the state” or “concealed” within the meaning of Section 11228, General Code. ■
 

 We fail to see the applicability of Sections 11231 and 11233, General Code, to this case. Section 11231, General Code, says:
 

 “Within the meaning of this chapter [Limitation of Actions], an attempt to commence an action shall be deemed to be equivalent to its commencement, when the party diligently endeavors to procure a service, if such attempt he followed by service within sixty days. ’ ’
 

 Even if the ineffective service on the Secretary of State in 1924 was a “diligent endeavor,” it was not “followed by service within sixty days,” which was necessary.
 
 Lambert
 
 v.
 
 Sample,
 
 25 Ohio St., 336, 339.
 

 Section 11233, General Code, states: “In an action commenced, or attempted to he commenced, if in due time a judgment for the plaintiff be reversed, or if the plaintiff fails otherwise than upon the merits, and the time limited for the commencement of such action at the date of reversal or failure has expired, the plaintiff, or, if he dies and the cause of action survives, his representatives may commence a new action within one year after such date * *
 

 Surely, such section contemplates the “commencement” of an action within the time limit of the appropriate statute of limitations, or as permitted by Section 11231, General Code, with at least a colorable service of process, and has no application to a ease like the instant one where no action was “commenced” for more than seventeen years after it accrued, and the ten-year statute of limitations was invoked as a defense against it.
 

 Of course, the date upon which the Court of Common Pleas determined the service of 1924 to be invalid is not controlling. It was void in 1924 and that fact was not postponed until a court said so in 1934.
 

 
 *548
 
 Having reached the above conclusions, other questions raised in the briefs of counsel and on oral argument need not be discussed or passed upon.
 

 The judgment of the Court of Appeals must be reversed, and that of the Court of Common Pleas affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Stephenson, Williams, Jones, Matthias and Day, JJ., concur.