**OHIO BRASS COMPANY, Plaintiff,**

v.

**ALLIED PRODUCTS CORPORATION,**
**Defendant.**

**No. C69–989.**

United States District Court,
N. D. Ohio, E. D.

March 7, 1972.

William A. Calhoun, Calhoun, Benzin & Murphy, James Calhoun, Carl R. Murphy, Mansfield, Ohio, for plaintiff.

Smith Warder, Arter & Hadden, David G. Davies, Cleveland, Ohio, for defendant.

## MEMORANDUM

BEN C. GREEN, District Judge:

Plaintiff's claim in this action, reduced to its simplest terms, is that the defendant breached a contract to supply stainless steel pins to the plaintiff by reason of some of the pins having been improperly heat-treated.

Defendant has moved for summary judgment, alleging that the action is barred by the four-year statute of limitations of Section 1302.98 of the Ohio Revised Code.

In response to that motion, plaintiff maintains that it is entitled to the fifteen-year statute of limitations of Section 2305.06 of the Ohio Revised Code, and that the running of any limitation period was tolled until January 29, 1968.

The question of law presented in this case arises from the fact that the transaction between the parties took place during the period when the law of Ohio governing sales transactions was shifting from the standards of the Uniform Sales Law to those of the Uniform Commercial Code. O.R.C. § 1302.98, which was adopted effective July 1, 1962, is responsive to Section 2–725 of the Uniform Commercial Code. Section 2305.06 of the Ohio Code relates generally to actions founded upon a written contract.

The basic facts controlling on this motion are as follows: the defendant corporation was not qualified to transact business in Ohio pursuant to Ohio statutory law until January 29, 1968; the contract in question was entered into on or about June 25, 1962; delivery of the stainless steel pins thereunder commenced on or about August 23, 1962 and concluded on or about January 4, 1963; plaintiff had notice of failure of some of the pins on or about September 11, 1965; suit was filed on or about December 11, 1969.

In the foregoing résumé of the facts no mention is made of the date upon which plaintiff was alleged to have discovered that the failure of the pins was due to alleged improper heat-treating. While such factor might possibly be relevant to a cause of action based on negligence, plaintiff has not advanced any contentions based on a theory of negligence in opposing defendant's motion, although defendant did take the position, in advancing the motion, that even an action founded on negligence would be time-barred. Consequently, for the purposes of this litigation, such fact issue is deemed irrelevant.

Section 1302.98, in pertinent part, provides that:

(A) An action for breach of [warranty] must be commenced within four years after the cause of action has accrued . . .

(B) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made
. . .

(D) This section does not alter sections 2305.15 and 2305.16 of the Revised Code on tolling of the statute of limitations, nor does it apply to causes of action which have accrued before July 1, 1962.

In this case, delivery of the goods under the contract was subsequent to July 1, 1962. Consequently, plaintiff's cause of action for breach of warranty accrued no earlier than August 23, 1962 and no later than January 4, 1963. Val Decker Packing Co. v. Corn Products Sales Co., 411 F.2d 850 (C.A.6, 1969); Wolverine Ins. Co. v. Tower Iron Works, 370 F.2d 700 (C.A.1, 1966; O.R.C. § 1302.98(B).

It would thus appear that the transaction in suit is subject to the four-year limitation period set forth in O.R.C. § 1302.98(A), and is not within the exemption provided in § 1302.98(D) for causes of action accruing prior to July 1, 1962.

Plaintiff seeks to avoid the imposition of the limitation period of § 1302.98(A) by reliance upon Section 3 of Amended Senate Bill No. 5 of the 104th General Assembly of Ohio (Amended Senate Bill No. 5 being Ohio's adoption of the Uniform Commercial Code). The textual portion of Section 3 read:

This act shall take effect on July 1, 1962. Transactions validly entered into before such date and the rights, duties and interests flowing from them remain valid thereafter and may be terminated, completed, consummated or enforced as required or permitted by any statute or other law amended or repealed by this Act as though such repeal or amendment had not occurred.

Instruments, documents, or notices filed prior to July 1, 1962, in accordance with the law at the time of such filings shall be deemed to be filed under section one of this Act as of the original date of filing and may be continued or terminated as provided in section one of this act.

Section 3 of the Amended Bill was not codified when the Act was generally adopted effective July 1, 1962. Thereafter, the statutory repealer portions of Section 3 were enacted as O.R.C. § 1301.15, omitting, however, the textual portion set forth above.

This Court does not agree with plaintiff's interpretation of the relationship of Section 3 of the Amended Senate Bill to the facts of this case. As the Court reads Section 3, the intent was that adoption of the Uniform Commercial Code should not disturb duties fixed by or rights vested under contract entered prior thereto. That was the effect given Section 3 in First National Bank of Marysville v. Bahan, 198 N.E.2d 272, 26 O.O.2d 429 (Ohio Com.Pl., 1964), relied upon by plaintiff.

The Ohio Supreme Court in Smith v. N. Y. C. Rd. Co., 122 Ohio St. 45, 170 N.E. 637 (1930) specifically adopted the language of the United States Supreme Court ruling in Terry v.

Anderson, 95 U.S. 628, 24 L.Ed. 365 (1877), that:

> The parties to a contract have no more a vested interest in a particular limitation which has been fixed, than they have in an unrestricted right to sue. They have no more a vested interest in the time for the commencement of an action than they have in the form of the action to be commenced; and as to the forms of action or modes of remedy, it is well settled that the legislature may change them at its discretion, provided adequate means of enforcing the right remain. 122 Ohio St. 49, 50, 170 N.E. 639.

Applying that rule to this fact situation, it was within the discretion of the Ohio legislature to reduce the limitation period for the bringing of an action for breach of warranty on a contract executed prior to July 1, 1962 as to which the breach occurred after July 1, 1962 from fifteen to four years.

The remaining question is whether the four-year limitation period of O.R.C. § 1302.98 was tolled by the operation of O.R.C. § 2305.15. That latter statute sometimes referred to as the "tolling statute" or "savings clause", in pertinent part, provides that:

> When a cause of action accrues against a person, if he is out of the state . . . the period of limitation for the commencement of the action as provided in . . . sections 1302.98 . . . of the Revised Code, does not begin to run until he comes into the state . . .

Plaintiff contends that it is entitled to the benefit of O.R.C. § 2305.15 on the premise that defendant was not statutorily qualified to do business in Ohio until on or about January 29, 1968, and had no agent for service of summons until that time. It is, therefore, urged

that defendant was absent from Ohio until January 29, 1968.

In support of its motion for summary judgment defendant advances two basic arguments.

Defendant contends that the alleged cause of action did not arise in Ohio, thereby precluding the application of O.R.C. § 2305.15. Wentz v. Richardson, 165 Ohio St. 558, 138 N.E.2d 675 (1956).

Alternatively, defendant argues that if the cause of action arose in Ohio the statute should not be held to apply for the reason that it had a managing agent present in the state upon whom service of summons could have been had and it was also amenable to extraterritorial service pursuant to O.R.C. § 1703.191.[1]

■■ As to defendant's first argument, that the cause of action originated in a foreign jurisdiction, the Court does not find that to be the case. Under O.R.C. § 1302.98(B) a breach of warranty occurs upon delivery. By defendant's own argument that no cause of action accrued until delivery was made in Ohio, it tacitly concedes the necessary element of an Ohio cause of action. While the action for breach of warranty has a contractual basis, it is not necessarily governed by the situs of the contract.

The next question is whether the defendant's amenability to service under O.R.C. § 1703.191 tolls the limitation provisions of O.R.C. § 1302.98. The parties have briefed this issue on the assumption that defendant was amenable to service of process pursuant to O.R.C. § 1703.191, and the Court has accepted that assumption.

In 1936 the Ohio Supreme Court decided the case of Title Guaranty & Surety Co. v. McAllister, 130 Ohio St. 537, 200 N.E. 831. In that case a foreign insurance company had initially qualified

---

1. Section 1703.191, in pertinent parts, provides: Any foreign corporation required to be licensed [under Chapter 1703] . . . which transacts business in the state without being so licensed shall be conclusively presumed to have designated the secretary of state as its agent for the service of process in any action against such corporation arising out of acts or omissions of such corporation within this state . . .

to transact business in Ohio, and some years thereafter ceased doing business, discontinued its offices and cancelled its agencies in the state. The claim asserted against the company arose after it had withdrawn from the state, but was based on a bond executed prior to that time. Service of summons was not had until after the applicable statute of limitations had run. The Supreme Court rejected the contention that the statute of limitations had been tolled by the company's withdrawal from Ohio. The court found that subsequent to such withdrawal the company (by virtue of a statutory provision) remained subject to substituted service in a suit brought upon a liability alleged to have arisen from the transacting of business while qualified to act in Ohio. The court stated:

As a fair proposition, the test of the running of the statute should be the liability of the party invoking it bar to the service of process during the whole of the period prescribed. If such process can be served during that time, and a personal judgment obtained, such party is not "out of the state" or "concealed" within the meaning of section 11228, General Code [the predecessor to O.R.C. § 2305.15]. id., pp. 546–547, 200 N.E. p. 835.

Having announced that philosophy, the Ohio Supreme Court was next called upon to consider the question of whether the absence of the makers of a cognovit note from the state tolled the statute of limitations, Commonwealth Loan Co. v. Firestine, 148 Ohio St. 133, 73 N.E.2d 501 (1947). While recognizing that a judgment could have been taken on the note in the absence of the defendants, the court held the statute to have been tolled, stating:

Section 11228, General Code, provides in unequivocal terms, without qualification or exception, that if a person, after the accrual of a cause of action against him, departs from the state, the time of his absence *shall not* be computed as any part of a period

within which the action must be brought.

Had the General Assembly intended to remove from the operation of the statute those causes of action against persons absent from the state but against whom judgment might be taken by confession, it could have done so by the use of appropriate language. If this court were to exempt these defendants from the terms of the statute, it would be doing that which the General Assembly has not seen fit to do and would be indulging in judicial legislation. id., pp. 138–139, 73 N.E. 2d pp. 503–504.

Applying the same rationale the court, three years later, held that the amenability of a non-resident motorist to substituted service did not prevent the application of the tolling statute, Couts v. Rose, 152 Ohio St. 458, 90 N.E.2d 139 (1950).

In 1953 the question of the tolling of a statute of limitations with regard to a non-resident defendant was again before the Ohio Supreme Court, Moss v. Standard Drug Co., 159 Ohio St. 464, 112 N. E.2d 542. Therein, after the running of the limitation period, the plaintiff attached assets of a non-resident corporation and issued service by publication. The defendant corporation was not qualified to do business in Ohio and there was no contention that at any time prior to the attachment of the particular funds involved the defendant had any attachable property in Ohio. Moss v. Standard Drug Co., 94 Ohio App. 269, 276–277, 115 N.E.2d 48 (1952). The Supreme Court held that the action before it was "an action in personam in which the quasi in rem proceeding in attachment is incidental", 159 Ohio St. 464, 473, 112 N.E.2d 542, 547, and, on the authority of *Commonwealth Loan* and *Couts* decisions, held that the statute of limitations had been tolled against the out-of-state defendant. There is no discussion in the *Moss* decision of the defendant's amenability to substituted service prior to the time of attachment.

The problem of the applicability of O. R.C. § 2305.15 to the absent defendant was before the Ohio Supreme Court again in Thompson v. Horvath, 10 Ohio St.2d 247, 227 N.E.2d 225 (1967). Therein an Ohio corporation had sold all its assets and ceased doing business. Service could not be perfected on the named statutory agent, who was in California when such service was attempted. After the statute of limitations had run, substituted service was had through the Secretary of State, pursuant to a statute which permitted such service in the event that service could not be had upon the named statutory agent.

The Ohio Supreme Court, relying upon the decision in Title Guaranty & Surety Co. v. McAllister, supra, held that the removal of the corporation from Ohio did not toll the statute of limitations, in that substituted service could have been had upon the defendant at all times prior to the running of the statute. The precise basis upon which the ruling in Thompson v. Horvath was predicated is unclear. On the one hand, there is a suggestion that the fact that the defendant had originally "consented to substituted service if actual service could not be made" was of importance. id., p. 251, 227 N.E.2d p. 228. On the other hand, the court distinguished Commonwealth Loan v. Firestine and Couts v. Rose on the basis that those cases involved natural persons while *McAllister* and the case before it involved corporations, stating:

> The court in each case relied on the actual absence of the defendant (in each case a real person) from the state. Although the savings statute does speak in terms of presence or absence rather than in terms of amenability to process, the literal application of the presence test makes sense only when the defendant is a real person, whose location determines presence *vel non*. A corporation, unlike a real person, has no physical presence but is rather a creature of the law. Thus, whether it is present or not depends on the purpose for which such pres-

ence must be determined. Id., p. 251, 227 N.E.2d p. 228.

Such language is somewhat difficult to reconcile with the holding in Moss v. Standard Drug, 94 Ohio App. 269, 275–276, 115 N.E.2d 48 (1952), affirmed 159 Ohio St. 464, 468–469, 112 N.E.2d 542 (1953), that the legislature intended no distinction between corporations and natural persons in the applicability of the tolling statute.

In any event, the Ohio Supreme Court clearly extended an invitation to the courts to return to the standard enunciated in the *McAllister* decision as to the applicability of the tolling statutes to absent corporations, stating:

> Since the defendant corporation was amenable to process [through substituted service] during the period of the statute of limitations, it was present in the state, the savings statute is inapplicable, and the statute of limitations is properly available as a defense. 10 Ohio St.2d 247, 251, 227 N.E.2d 225, 228.

Judge Kalbfleisch, of this court, accepted such invitation in a case very much akin to that before the Court, Partis v. Miller Equipment Co., D.C., 324 F.Supp. 898 (1970). Therein, a foreign corporation was named as a party to a pending action after the statute of limitations had run. Jurisdiction was asserted, and service of process had, pursuant to the Ohio long-arm statute. Judge Kalbfleisch reviewed the Ohio decisions, and found that:

> Summarizing the law of Ohio, it is clear that Section 2305.15 of the Revised Code tolls a statute of limitations when the potential defendant is absent from the state, regardless of whether or not the plaintiff has a means of subjecting the defendant to the court's jurisdiction and obtaining a personal judgment against him. The rule springs from the mandatory terms of the savings statute, which statute is deemed applicable despite circumstances which appear to obviate the reasons behind its enactment.

In Thompson v. Horvath, supra, the Ohio Supreme Court did not discredit or overrule the principle just stated; rather it defined "presence" and "absence" as those terms relate to Section 2305.15 in cases where the defendant is a corporation. And the rule laid out in the Thompson case is that "presence" of a corporation under the savings statute is determined by its amenability to process, whereas the presence of a natural person is determined by physical location, regardless of his amenability to process. id., p. 902.

Applying that interpretation, Judge Kalbfleisch dismissed the complaint as to the foreign corporation. That ruling was affirmed by the Sixth Circuit Court of Appeals, 439 F.2d 262, 263 (1971), with admitted "difficulty of reconciling the [Ohio] cases relating to individual defendants and corporate defendants."

Were Thompson v. Horvath, supra, as construed in Partis v. Miller Equipment Co., supra, the end of the road on this somewhat twisting journey of the tolling statute through the courts, decision herein would be a simple matter. Unfortunately, neither of those propositions is correct.

Approximately six weeks after the Sixth Circuit Court of Appeals' affirmance of the ruling in the *Partis* case, the Ohio Supreme Court retreated from the broad rule apparently announced in Thompson v. Horvath, supra, and reiterated the standards of Commonwealth Loan v. Firestine, supra, and Couts v. Rose, supra. Seeley v. Expert, Inc., 26 Ohio St.2d 61, 269 N.E.2d 121 (1971). In *Seeley* non-resident plaintiffs were involved in an auto accident in Lucas County, Ohio with a truck driven by a non-resident employee of a Michigan corporation. Suit was filed in Ohio against the driver and his employer after the applicable statutes of limitation had run. The Ohio Supreme Court postulated the issue before it thereby:

The most troublesome question presented by this case is whether such a "savings clause" is or ever should be applicable to toll a statute of limitations in cases where there is no need for such tolling; in cases where suit may be commenced *at any time* and a judgment *in personam* obtained despite the absence of the defendant from the state of Ohio. 26 Ohio St.2d 61, 65, 269 N.E.2d 121, 125.

The conclusion of the court was that:

Were this a question of first impression in Ohio, the adoption of such a rule might be justified upon the basis that the purposes to be served by tolling the statute of limitations are necessarily so interwoven into the statute —even though not expressed—that the application of the statute is limited to cases where suit cannot be instituted because the defendant is not amenable to process.

\*     \*     \*     \*     \*     \*

Any rule establishing the inapplicability of the "savings clause" to situations where a defendant is amenable to process could not logically make any distinction as to the type of process. It logically would have to apply regardless of whether the nonresident was amenable to process under R.C. § 2703.20, under the "long-arm" statutes, R.C. §§ 2307.38.2 and 2307.38.4, or by some other method. It likewise would apply where service of process is not needed to obtain a personal judgment, e.g., cognovit judgments.

\*     \*     \*     \*     \*     \*

Defendants urge this court to reexamine the position taken in *Commonwealth* and *Couts*. They point out that a majority of the states, with comparable "savings clause" statutes, have taken the view that the statute of limitations is not tolled under circumstances of amenability to process. Their position presents a very persuasive argument for change in the existing Ohio law in such respect. We conclude, however, that a change of the law by court "interpretation" at this time would be violative of the basic rules of statutory interpretation.

In the second paragraph of the syllabus of Slingluff v. Weaver (1902), 66 Ohio St. 621, 64 N.E. 574, this court held:

". . . The intent of the lawmakers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly the sense of the lawmaking body, there is no occasion to resort to other means of interpretation. The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction."

The literal language of the Ohio "savings clause" is tied to the tolling of acts which prevent *personal service* in Ohio rather than to acts which would prevent any judgment *in personam*. Even assuming that a legislative intent to the contrary might have been inferred prior to judicial determination by this court rejecting such a position, principles of *stare decisis* and legislative acceptance should preclude the overruling of *Commonwealth* and *Couts* at this time.

\* \* \* \* \* \*

In accordance with our holding in Couts v. Rose (152 Ohio St. 458, 40 O.O. 482, 90 N.E.2d 139), we conclude that the provisions of R.C. § 2305.15, tolling the running of the Ohio statutes of limitations during the time a defendant is absent from the state of Ohio, are applicable despite the fact that suit could have been brought in Ohio at any time after the automobile accident . . . id., pp. 67, 69–70, 71, 71–72, 73, 269 N.E.2d 126, 127, 128–129.

When called upon to distinguish Thompson v. Horvath, supra, and Title Guaranty & Surety v. McAllister, supra, the court pointed out that each involved a corporation which had originally been subject to service of process in Ohio.

However, the court further quoted the language from the *Horvath* decision which found a difference between corporate and individual defendants. The incorporation of that delineation is quite mystifying, in that the Ohio Supreme Court had before it both a corporate and an individual defendant, and applied the same rule to each.

■■ The only reasonable conclusion to be drawn from the decisions of the Ohio Supreme Court, at least to date, is that a foreign corporation upon which personal service in Ohio could not be had is absent from the state within the meaning of O.R.C. § 2305.15, and that the statute of limitations does not run against such corporation until such time as it is subject to personal service in Ohio, regardless of the fact that an Ohio court could have acquired *in personam* jurisdiction over such corporation by virtue of substituted service. The Court recognizes that such rule is contrary to the rule applied by the Sixth Circuit Court of Appeals in Partis v. Miller Equipment Co., supra. While a District Court is generally bound to adhere to rulings of a Court of Appeals, in a diversity action where the highest state court has subsequently interpreted state law in a manner inconsistent with the interpretation of the federal court it is the ruling of the state court which must be followed.

■ Consequently, in this case the limitation period of O.R.C. § 1302.98(A) must be considered as tolled against this defendant pursuant to O.R.C. § 2305.15, unless the defendant was subject to personal service in Ohio in the period of time subsequent to the accrual of plaintiff's cause of action.

■ The defendant contends that it was subject to personal service. Defendant alleges that it had a salesman, known to the plaintiff, with his office in Mansfield, Ohio throughout the time period in question. Defendant then argues that service could have been had upon the corporation through such salesman as a "managing agent" or by serv-

ing summons at the office as the "usual place of business of the corporation with the person having charge thereof", O. R.C. § 2703.10.

Although affidavits of the salesman and of defendant's marketing manager have been submitted, the Court is not satisfied that they establish to the degree required by Rule 56 of the Federal Rules of Civil Procedure that the salesman was a "managing agent" of the corporation and/or that the corporation had a "usual place of business", within the context of the Ohio statute.

If it should be established at trial that the salesman was a proper agent for service, the statute of limitations would continue to run for those periods of time when he was physically present in Ohio. Conceivably, that might result in a finding that plaintiff's action is time-barred.

On the other hand, if it should develop that the salesman was not a proper agent for service, defendant would not be entitled to avail itself of the defense of limitations.

Defendant's motion for summary judgment will be denied.