**In re Floyd Henry HITE, Bankrupt.**

**Edward F. ZOLTANSKI, Trustee, Plaintiff,**

**v.**

**PRODUCTION CREDIT ASSOCIATION, Defendant.**

**Bankruptcy No. B78–892.**

United States Bankruptcy Court, N. D. Ohio, W. D.

June 4, 1980.

Thomas R. Michalski, Kemper, Eickholt & Michalski, Toledo, Ohio, for trustee-plaintiff.

Reeder C. Hutchinson, Weaner, Hutchinson, Zimmerman & Bacon, Defiance, Ohio, for Production Credit Association.

Norman E. Cook, Paulding, Ohio, for Union State Bank.

James E. Barber, Wauseon, Ohio, for bankrupt.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

The above captioned cause came before the Court on a Complaint To Determine

Priority And Validity of Liens Re: Tangible Personal Property, with evidence and testimony presented, and briefs in lieu of argument.

This case involves the determination of validity and priority of liens on the proceeds of the sale of certain personal property; the Union State Bank (Bank) claiming a first and best lien thereon through a perfected purchase money security interest, and Defiance Production Credit Association (PCA) claiming the same by virtue of its perfected security interest in the property and proceeds. PCA's claim is that the Bank did not have a security agreement with the Bankrupt, and therefore, no security interest could have attached. There is no issue as to the sufficiency of perfection of these interests by either the Bank or PCA.

In support of its claim, the Bank presented a promissory note payable to Union State Bank, Payne, Ohio, in the amount of $19,475.00 plus interest, signed by Floyd Hite on December 4, 1975. The note further states:

"As collateral security for the payment hereof, and of any and all other indebtedness of us, or any of us, to the holder hereof, present and future, there has been pledged and delivered unto said bank the following property:

G Combine # 8378

438 Cornhead

of a market value estimated by the undersigned at $26,000.00 Dollars."

Stamped in large letters on the lines on which the collateral properties are listed is "SECURED NOTE". The form appears to be a standard printed form, containing conditions regarding the status of the pledged securities and an insolvency/bankruptcy clause. A payment schedule appears to have been typed in above an after-acquired clause and statement of the finance charge, annual percentage rate, and late payment charge information.

A second note, identical to the first note, with "SECURED NOTE" stamped in the same place, identifies a 13-foot chisel plow as collateral security for payment of an $1,850.00 obligation due Union State Bank by Floyd Hite. That note is dated January 9, 1975, and is signed "Floyd Hite".

Accompanying these notes are financing statements filed with the Fulton County Recorder December 9, 1975, and January 13, 1975, respectively, which indicate the secured party as Homier & Sons, a farm equipment supplier. At the hearing, the Bank's president testified that the Bank provides these legal forms to Homier & Sons to facilitate sales of equipment.

It is the position of the Bank that the use of "pledge" language should not detract from the intent of Floyd Hite and the Bank to create or provide for a security interest, that the notes and financing statements together meet the requirements of Revised Code § 1309.14(A) (Attachment and Enforceability of Security Interest) and therefore the Bank has a first and best lien on the remaining proceeds of the sale of the property as a purchase money secured party. Testimony of the Bank's president revealed that the Bank never intended to take possession of the collateral in the instant case, that this form has been used by the Bank for other loans and security agreements, and that the Bank considered itself secured by the signing and filing of the Uniform Commercial Code financing statements.

PCA claims the entire balance of the proceeds by virtue of its three notes for $71,425.00 dated December, 1974, $8,340.00 dated March, 1975, and $15,000.00 dated April, 1977, and its combination Security Agreement and Financing Statement, duly filed with the Fulton County Recorder on August 14, 1974, which covers "all machinery and equipment including but not limited to Tractors, Tilling and Harvesting Tools."

The issue to be decided is whether the notes and financing statements executed by Floyd Hite to the Union State Bank can together serve as a security agreement. Determination of this question must begin with the statutory definitions of the Code terminology.

Revised Code § 1309.01(A)(8) defines 'security agreement' as an agreement which creates or provides for a security interest. 'Agreement' is defined in § 1301.01(C) as the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance.

'Security interest' means, according to § 1301.01(KK), an interest in personal property or fixtures which secures payment or performance of an obligation.

Regarding the enforceability of a security interest, the applicable Revised Code section provides that a security interest is not enforceable unless 1.) the collateral is in possession of the secured party; or 2.) the debtor has signed a security agreement which contains a description of the collateral. Ohio Revised Code § 1309.14. Briefs submitted by counsel indicate amended § 1309.14, effective 1/1/79 as the applicable section. However, the appropriate section is the former § 1309.14, as the transactions occurred in 1974–75. See *Ohio Brass Company v. Allied Products*, D.C., 339 F.Supp. 417 (1972) and *First National Bank v. Bahan*, 198 N.E.2d 272, 26 Ohio Op.2d 429 (1964).

Revised Code § 1309.39(A), in effect until 1/1/79, states that a financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items of collateral.

Although no issue is raised as to the sufficiency of the financing statements, the departure point of this analysis is that the Code contemplates the execution of both a security agreement and a financing statement. *Evans v. Everett*, 279 N.C. 352, 183 S.E.2d 109, 9 UCC Rep. 769. The official comments to UCC § 9–203 (Revised Code § 1309.14) reveal a dual purpose behind the formal requisites of a security agreement.

"One purpose of the formal requisites * * * is evidentiary. The requirement of a written record minimizes the possibility of future dispute as to the terms of a security agreement and as to what property stands as collateral for the obligation secured." UCC § 9–203, Comment 3.

"The formal requisite of a writing stated in this section is not only a condition to the enforceability of a security interest against third parties, it is in the nature of a Statute of Frauds," to prevent the enforcement of claims based on wholly oral representations. See UCC § 9–203, Comment 5.

■ The policy behind the financing statement requirements is clearly that of notice filing. See UCC § 9–402, Comment 2.

■ There is ample authority that a financing statement, without more, cannot serve as a security agreement. *Mid-Eastern Electronics, Inc. v. First National Bank*, 380 F.2d 355 (4th Cir. 1967); *In re Numeric*, 485 F.2d 1328 (1st Cir. 1973); *In re Mancini Meat & Provision Co.*, 23 UCC Rep. 1037 (1977); *In re Modern Engineering and Tool Co., Inc.*, 25 UCC Rep. 580 (1978); *Komas v. Small Business Administration*, 71 Cal. App.3d 809, 139 Cal.Rptr. 669, 22 UCC Rep. 550 (1977); *In re Penn Housing Corp.*, 367 F.Supp. 661 (W.D.Pa.1973). These cases, recognizing the notice policy of the financing requirement, conversely suggest that a financing statement, attended by other documents or circumstances, may suffice as a valid security agreement. See also *In re Center Auto Parts*, 6 UCC Rep. 398 (1968); *In re Carmichael Enterprises*, 334 F.Supp. 94 (N.D.Ga.1971), *aff'd. per curiam*, 460 F.2d 1405 (5th Cir. 1972); *In re Miller*, 545 F.2d 916 (5th Cir. 1977); *In re Amex-Protein Development Corp.*, 504 F.2d 1056 (9th Cir. 1974), 15 UCC Rep. 286. Given the narrowly stated purposes of UCC § 9–203 and the broad definitions of "agreement" and "security agreement", that is a sound approach. It is to be remembered that among the underlying policies of the Uniform Commercial Code is the simplification of the law governing commercial transactions; the UCC thus requires liberal construction of its provisions. UCC § 1–102(1), Revised Code § 1301.02(A).

In the case of *In re Numeric, supra,* the court found that a financing statement covering equipment, together with a resolution of the directors of the bankrupt corporation, established that an agreement in fact existed to give the creditor a security interest, and fulfilled the purpose of a security agreement under the UCC. The court concluded that, "a separate formal document entitled 'security agreement' is not always necessary to satisfy the signed-writing requirement of § 9–203(1)(b)". *In re Numeric, supra* at 1331.

*Evans v. Everett, supra,* involved a promissory note which contained the following: "This note is secured by Uniform Commercial Code financing statement of North Carolina." The defendant therein contended he signed no agreement which created or provided for a security interest. The court, citing *In re Center Auto Parts, supra,* rejected the defendant's contention and held that the financing statement and note manifested the defendant's intent to create in the plaintiff a security interest in the described collateral, and that the minimum requirements of the Code were met. See also *Komas v. Small Business Administration, supra,* and *Casco Bank & Trust Co., Me. v. Cloutier,* 388 A.2d 224, 26 UCC Rep. 499 (1979).

Thus, while no formal wording may be required to create a valid security interest, it appears there are no cases where, as in the instant case, a combination note-pledge form was relied upon as creating or providing for a nonpossessory security interest. PCA makes much of this fact in their memorandum, maintaining that since the Bank failed to take possession of the property, its security interest did not attach. It is the opinion of this Court that such a rigid interpretation fails to take into account the agreement and intentions of the parties in fact, and further is "a warrantless reliance on formalism". *In re Numeric, supra* at 1332.

The case of *Suzzi v. Atlantic Dep't. Stores, Inc.,* 3 OO3d 125 (1976) is cited by PCA as standing for the proposition that the provisions of UCC § 9–203 (Revised Code § 1309.14) are exclusive in nature and a security interest can be created in no other way. This reference is somewhat out of context. The court in *Suzzi* found a valid security interest pursuant to the terms of a license agreement, but rejected the appellee-licensor's contention that such security interest remained valid beyond the expiration date of the license agreement. It was with reference to this argument that the Court propounded the exclusive nature of the requirements for an enforceable security interest. That statement cannot be construed here to mean that *only* a document entitled "SECURITY AGREEMENT" will create an enforceable security interest. It has been held sufficient that the parties use language which leads to the conclusion that security interest be created. *In re Amex-Protein Development Corp., supra,* at 1059. It is noteworthy that UCC § 9–102 provides:

> "Except as otherwise provided in Section . . . 9–104 on excluded transactions, this Article applies . . .
> a) to any transaction (*regardless of its form*) which is *intended* to create a security interest in personal property or fixtures * * *". (emphasis supplied)

Upon application of the Trustee in this bankruptcy proceeding, Floyd Hite was examined concerning the basis for the liens in question. That examination established that Floyd Hite knew the difference between a secured and an unsecured creditor; that he intended to give the Bank a security interest in his farm machinery; that when he borrowed from the Bank he understood a security interest would be taken by the Bank in the farm machinery; and that repossession of the machinery by the Bank was intended in the event of default.

That an executed pledge form without possession precludes attachment of a security interest is a point well taken, however the present case does not deal with a pledge but a creation of a security interest in chattels which are not to be retained by the secured creditor. Whatever shortcomings the format used by the Bank may have been, the testimony and documents in this

case manifest the intent of the parties to create or provide for a security interest; the notes and the financing statements bear the signature of the debtor and describe the collateral sufficiently.

Accordingly, it is therefore ORDERED, ADJUDGED and DECREED that the Union State Bank has a valid purchase money security interest in the property and proceeds in question, and it is

FURTHER ORDERED that the Bank's lien has priority over that of PCA.