CASE 55—ACTION BY DEPOSIT BANK OF PARIS AND OTHERS AGAINST JAMES DUNDON TO ENFORCE A MORTGAGE LIEN ON CATTLE, IN WHICH EDWARD SPARKS INTERVENES.—MAY 1.

# Sparks v. Deposit Bank of Paris and Others.

APPEAL FROM HARRISON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND SPARKS APPEALS. AFFIRMED, AND ON REHEARING MODIFIED AND REVERSED.

CHATTEL MORTGAGES—CATTLE—DESCRIPTION—SUBSEQUENT PURCHASER —CONSTRUCTIVE NOTICE.

Held: 1. A chattel mortgage on certain cattle, properly recorded, described them as "thirty-six head of yearling cattle on the farm of L. D., said farm being now occupied by said D., near L. Station ,H. county, Ky." At the time mortgage was given, six of the cattle were six months old, and the others were from nine to eleven months old. Intervener purchased certain of the cattle eleven months thereafter, and, in an action by the mortgagee to recover the same, it was proved that at the time of the execution of the mortgage the cattle would have been designated by stockmen as "short yearlings," and at the time of intervener's purchase as "long yearlings." HELD, that the

description in the mortgage was sufficient to charge intervener with constructive notice of the mortgagee's lien.

2. While the mortgage under the foregoing description was good as to thirty-six head of the cattle, it appearing that there were forty-four head of cattle of the same description in the lot, including the thirty-six, and that the intervener purchased eighteen of the lot. HELD that the mortgage only calling for thirty-six head, the intervener was entitled to eight head, the difference between thirty-six and forty-four.

McMILLAN & TALBOTT, FOR APPELLANT.

### AUTHORITIES.

Mis-description. Bowman v. Roberts, 58 Miss., 126.

1. "A mortgage of a specified number of articles out of a larger number is void for uncertainty, when the particular articles intended to be conveyed are not separated or designated in any way so that they can be separated from others of the same kind." Kelly v. Reid, 57 Miss., 89; Stonybraker v. Ford, 81 Missouri, 533; Crosswell v. Allis, 25 Conn., 301; Draper v. Perkins, 57 Miss., 277; Newell v. Warner, 44 Barb., (N. Y.), 258, 263; Fowler v. Hunt, 48 Wis., 345; Pearson v. Wright, 35 Ark., 169; Washington v. Love, 34 Ark., 93; Richardson v. Alpena Lumber Co., 40 Mich., 203; Blakely v. Patrick, 67 N. C., 40.

2. The rule in Kentucky is that a mortgage may be void for want of a sufficient description either of the debt or of the property, 12 Bush, 209, Pearce v. Hall; 17 Kentucky Law Reporter, 736, Robinson Company v. Sharp. If the parties to a mortgage were allowed to supplement the mortgage with declaration of intention, there would be no such thing as a void mortgage, because they could always say what they intended. As our courts recognize that a mortgage may be void for the reason above indicated, we must conclude that a mortgage can not be supplemented by verbal proof of the intention of the parties.

3. The rule in Kentucky is that a mortgage must show for itself and "without the aid of extrinsic evidence the nature of the lien." Pearce v. Hall, 12 Bush, 209.

### ADDITIONAL POINTS ON REHEARING.

Inasmuch as appellees thus admitted that the cattle were on the Leonard Drane farm occupied by Dundon from the day of the Connor sale until they were sold, which was in the following winter or spring, it was unnecessary for us to introduce additional proof on the subject, for why call other

Sparks v. Deposit Bank of Paris and Others.

witnesses to prove what was admitted on the record by the appellees themselves? Hence we have established beyond the peradventure of a doubt the three propositions above stated:

1. That the Connor sale took place before October 8, 1900, to-wit, on October 4, 1900.

2. That the eight Connor cattle were brought to Dundon's farm before the 8th of October, 1900, to-wit, on October 4, 1900.

3. That they continued on that farm up to and after the 8th day of October, 1900, when the mortgage was executed to the Deposit Bank of Paris, in fact, until resold.

Consequently the record establishes that instead of being only thirty-six, there were forty-four cattle on the Drane farm (in addition to the two milk cows) on the day the mortgage was executed October 8, 1900.

As counsel did not question our position as to the law, but concedes it, only questioning our assertion of the fact about the Connor cattle, and as we have established that fact, we feel that nothing further need be said, though there are many things in his brief which we would otherwise discuss.

T. E. ASHBROOK AND J. J. BLANTON, ATTORNEYS FOR APPELLEE.

### POINTS AND AUTHORITIES

1. A chattel mortgage on *"thirty-six head of yearling cattle on the farm of Leonard Drane, said farm being now occupied by said Dundon near Lair Station, Harrison county, Kentucky,"* is sufficient description of the property intended to be embraced therein, and it is competent to prove that the cattle actually mortgaged were "short yearlings," and were the only cattle owned by the mortgagor at the time located on the Drane farm.

2. This mortgage is constructive notice to all parties and is sufficient to put the purchaser of the cattle upon inquiry as to what cattle were actually embraced in the mortgage.

### AUTHORITIES CITED.

Pearce v. Hall, 12 Bush, 209; Jones on Chattel Mortgages, secs. 53 and 54; Cobbey on Chattel Mortgages, vol. 1, sec. 155; Yant v. Harvey, 55 Iowa, 421; Talbert v. Horton, 33 Mun., 104; Harris Kennedy, 48 Wis., 500; Am. & Eng. Ency. of Law, vol. 5, p. 956.

OPINION OF THE COURT BY JUDGE SETTLE—AFFIRMING.

Appellee sued James Dundon in the Harrison circuit court on a note of $715 of date October 8, 1900, due 12 months after date, and bearing 7 per cent. interest

from date until paid. The note was secured by a mortgage of the same date on "thirty-six head of yearling cattle on the farm of Leonard Drane, said farm being now occupied by said Dundon near Lair Station, Harrison county, Ky." The mortgage was properly acknowledged by Dundon, and soon thereafter duly recorded in the office of the clerk of the Harrison county court. In the action appellee sought a personal judgment against Dundon for the amount of the note and interest, and asked for the enforcement of its lien upon the cattle described in the mortgage. The appellant, Edward Sparks, was made a defendant in the action because he had purchased of Dundon, and claimed to own, 18 of the 36 cattle embraced by the mortgage. The 18 cattle were, however, taken from his possession under a specific attachment issued at appellant's instance, and upon the grounds allowed by section 249, Civ. Code, which grounds were appropriately set forth in its petition. By agreement of parties the cattle taken under the attachment were, by order of court, sold by the sheriff, and purchased by appellant, who gave bond for the purchase price, $558, payable to the sheriff, for the use of whomsoever the court might direct. The answer filed by appellant set up the defense that he was a bona fide purchaser of the 18 cattle, without actual notice of appellee's mortgage, and denied that the cattle thus purchased by him were included in appellee's mortgage. Upon the trial the decision of the chancellor was in favor of appellee, and judgment was accordingly entered sustaining the attachment, enforcing appellee's mortgage lien, and directing the payment to it of the sum received by the sheriff upon the sale of the cattle, less the costs of the sale, and of feeding the cattle while held under attach-

ment. Appellant complains of that judgment, and seeks its reversal by this appeal.

The only question necessary to be determined is whether or not the description of the cattle contained in the mortgage was sufficient to give appellant constructive notice of appellee's lien thereon. The mortgage was executed October 8, 1900, and the cattle were-bought by appellant at public auction in Paris, Ky., September 1, 1901. It is conclusively shown by the evidence that appellee furnished the money to Dundon with which to pay for the 36 cattle on or about October 1, 1900, with the agreement between them that it was to be secured-by the execution of the mortgage as soon as the purchase of all the cattle was completed, which was done on the 8th of the same month. It is equally clear from the proof that the 36 head of cattle ranged in age from 6 months to 11 months, or, to be more specific, they were, according to the proof, purchased from the following persons, and as of the ages opposite the names of such persons, respectively:

Of Phelps ..................... 2 head, age  8 months
Of Worthington ............... 5 head, age  6 months
Of Bently .................... 1 head, age  6 months
Of Garnett ................... 13 head, age 11 months
Of Smith ..................... 11 head, age  9 months
Of Leach ..................... 4 head, age  9 months

Total ..................... 36 head

These cattle at the date of the mortgage were what are called by some of the witnesses "short yearlings," but at the date of the sale from Dundon to appellant, September 1, 1901, a little less than 11 months after the execution of the mortgage, they were what is known among stockmen as "long yearlings." In other words, in stockmen's parlance,

cattle about or approximately near, 1 year of age, are called "short yearlings." Aften entering the second year, and before completing it, they are called "long yearlings." So there was nothing misleading in these cattle being denominated "yearling cattle" in the mortgage, for, though six of them appear to have been 6 months old, the others were from 9 to 11 months old. The appellant had constructive notice of the existence of the mortgage lien when he purchased 18 of the cattle of Dundon, for the mortgage was then, and had for months been, a matter of record, and in law he must be regarded as having knowledge of that fact. Suppose he had gone to the clerk's office of Harrison county, and examined the mortgage as there recorded. It would have informed him that it embraced "thirty-six head of yearling cattle" that Dundon owned, and had on the Leonard Drane farm, in Harrison county, at the date of the mortgage, viz., October 8, 1900. This description was enough to put him upon inquiry, which, if pursued, would have resulted in his being advised of the fact that the 18 head of cattle he was about to purchase were a part of those covered by the mortgage; and the recital in the mortgage was sufficient of itself to inform him that the "long yearlings" that Dundon was offering for sale might have been, and in fact were, "short yearlings" in October, 1900, when included in the mortgage. In Jones on Chattel Mortgages, section 53, it is said: "It is not necessary that the property should be so described as to be capable of being identified by the written recital or by the name used to designate it in the mortgage. Parol evidence is admissible to show that a particular article is included within the general words of a description. Thus under a mortgage of all the stock, tools, and property belonging to the mortgagor in and about a wheelwright's

shop occupied by him, parol evidence is admissible to show what articles were in and about the shop when the mortgage was made. . . . Resort must generally be had to parol evidence to identify the property mortgaged, although it be enumerated and described with the utmost minuteness. . . . A mortgage of a certain number of horses in the mortgagor's possession requires evidence dehors the instrument to identify the property, but such evidence would be equally necessary had the horses been more particularly described—as, for instance, had they been described as long-tailed gray horses." Continuing, the author further says, in section 54: "The description need not be such as would enable a stranger to select the property. A description which will aid third persons, aided by inquiries, which the instrument itself suggests, to identify the property, is sufficient. . . . . Descriptions do not identify of themselves. They only furnish the means of identification." Again, in section 64, the same author says: "With the aid of evidence *aliunde* to identify the property, the following descriptions in mortgages have been held sufficient: 'Eight horses now in a certain stable,' although at the time the mortgage was executed, and for some time before and afterwards, other horses, not belonging to the mortgagor, were boarded in the same stable. 'Ten horses in the mortgagor's possession.' 'Five freight wagons and twenty-five yoke of cattle, being the train now in my possession.'" The rule announced by Jones in the foregoing quotations was in effect recognized by this court in Pearce v. Hall, 12 Bush, 209. The doctrine relied on by counsel for appellant, that "a mortgage of a specific number of articles out of a larger number is void for uncertainty, unless the particular articles intended to be conveyed are separated and designated

in some way so that they can be separated from others of the same kind," does not, in our opinion, apply in this case. The mortgage in controversy does not embrace 36 out of 40 head, but all the yearlings owned by Dundon on the Drane farm when the mortgage was made. It is shown by the evidence that Dundon bought four cattle at Dr. Conner's sale about the time this mortgage was given, but it is not clear from the evidence that these four cattle were taken to the Drane farm before the execution of the mortgage. On the contrary, it does appear with reasonable certainty that they were not on the farm when the mortgage was taken. In fact, the evidence conduces to prove that the only other cattle besides the 36 yearlings that were on the Drane farm at the time of the mortgage were two milch cows, neither of which can come under the description given in the mortgage.

Dundon's conduct in selling and disposing of the mortgaged property to appellant does not present him in an enviable light, but his testimony as to material facts is corroborated, in the main, by other witnesses, who seem to be both intelligent and trustworthy. Though willing to admit that the conclusion arrived at by the chancellor in this case is not free from doubt, we are unable to say that it is against the weight of the evidence. It therefore follows that the mortgage made by Dundon to appellee contained a sufficient description of the cattle intended to be included thereby; that the description was such as to give appellant, at the time of his purchase of 18 of these cattle from Dundon, constructive notice of appellee's lien thereon; and, further, that the cattle purchased by appellant were reasonably identified by the proof as being of the 36 included in the mortgage. Hence the judgment of the lower court is affirmed.

(January 20, 1904.)

Modified opinion by Judge O'Rear on rehearing, reversing:

A re-examination of the record discloses that there were in fact 44 head of cattle of the description contained in the mortgage in this case—*i. e.* "yearling cattle on the farm of Leonard Drane, now occupied by said Dundon, near Lair station, Harrison county, Kentucky"—whereas the mortgage embraced only 36 of the number. The mortgage does not disclose that there were any other cattle of that description on that farm. This altered state of facts presents in part a different question from that decided, although the principles announced in the original opinion are adhered to, and are deemed by the court to be pertinent in the consideration of the question now presented.

The first question for decision is whether the description in the mortgage is in itself sufficient to constitute a valid mortgage. For the reasons heretofore stated in the opinion by Judge Settle, we hold that it is.

The next is, granted that the description is sufficient, will the mortgage be valid if it undertakes by such description to mortgage an unseparated and unidentified number of a greater number of articles? If a mortgage is given to cover only part of a lot or mass of chattels of the same kind and description, it can not be material, as affecting the validity of the mortgage, whether the fact that it discloses only a part of the lot is embraced, or whether that fact is shown otherwise, for it is the fact that affects the mortgage, and not the statement of it. The authorities are not uniform as to whether such mortgage is void. As between the parties to it, it is generally held to be valid. Call v. Gray, 37 N. H., 428, 75 Am. Dec., 141; Williamson v. Steele, 3 Lea, 527, 31 Am. Rep., 652; Stephens v. Tucker,

14 N. J. Law, 600. In some cases it has been held valid even as against purchasers or creditors when the parties to such mortgage, conceded to be invalid, have designated the property to be included by setting it apart, or separating it from the general bulk, or by the mortgagee's taking possession of a part which the parties thereby show an intention to designate as the part embraced by the mortgage. Parsons Savings Bank v. Sargent, 20 Kan., 576; Jno. S. Brittain Dry Goods Co. v. Blanchard, 60 Kan., 263, 56 Pac., 474; Pruett v. Warren, 87 Mo. App., 566; Inter State Galloway Cattle Co. v. McLain, 42 Kan., 680, 22 Pac., 728. A number of cases hold mortgages such as this to be void; others that they are valid. We are inclined to take the latter view. The reasoning supporting it may be found in the oldest cases, as well as some of the latest. Heywood's Case, 2 Coke on Littleton, 145; Bacon's Abridgment, "Election" (B); Mervyn v. Lyds, Dyer, 91; Wofford v. McKinna, 23 Tex., 46, 76 Am. Dec., 53; Call v. Gray, 37 N. H., 428, 75 Am. Dec., 141; Oxsheer v. Watt, 91 Tex., 124, 41 S. W., 466, 66 Am. St. Rep., 863. It is called the doctrine of selection or election, for by such instrument the grantor impliedly, invests his grantee with the right to select the stated number or quantity from the grantor. Injustice to neither mortgagor nor purchaser nor creditor can result from this rule; for, unless the election is made before the rights of the purchaser or creditor intervene, the latter will be entitled to at least the average of the whole, or maybe to themselves have choice, leaving enough of the average of the whole to satisfy the mortgage.

The purpose of the mortgage in this case was to give the mortgagee a lien on thirty-six yearling cattle on the Dundon farm to secure the debt named. That was the agreement of the parties. It ought to be enforced as between

them, and the weight of the best-reasoned authorities seems
to sustain this statement.   The selection of the particular
thirty-six cattle in that case, there being forty-four of the
same description, would be, and ought to be, with the mort-
gagee, for the reason that, as it was the purpose of the par-
ties to secure the debt, and that only, such cattle as will
fulfill that purpose, if any thirty-six will do it, ought to
be selected, as, if there should be an excess of value, it
belongs or reverts to the mortgagor after the payment of
his debt, while, if there is a deficit in value, the mortgagee
would lose, and the object of the mortgage fail.   Another
reason is that in a chattel mortgage, as in a deed, the grant
shall be taken most strongly against the grantor.   The pur-
pose of recording the mortgage is to give to intending pur-
chasers or creditors notice of its existence; notice that the
owner of the cattle has given the lien mentioned for the
purpose stated.   The object of the mortgage is to protect
the mortgagee, and insure the fulfillment of the original
agreement of the parties.   The object of the recording is
to warn purchasers that they may refrain from buying un-
til the lien is discharged, or until the mortgagor and mort-
gagee have set apart the particular chattels to be held
under the mortgage.   The original opinion holds, and is
fully sustained by all the text-writers and cases, that the
mortgage need not of itself identify the mortgaged proper-
ty.   It is enough if it puts the purchaser on inquiry which,
if reasonably pursued, will result in his obtaining the exact
information as to what property the mortgage incumbers.
So here the mortgage notifies the purchaser that the mort-
gagee, the bank, had a mortgage lien upon thirty-six year-
ling cattle on the Dundon farm.   It is conceded that, if
there had been only thirty-six cattle of that description
there when the mortgage was given, it would have been a

sufficient description, even though others of the same description were subsequently added to the lot by the mortgagor. In this last supposed state of case the purchaser would have been bound to inquire as to what thirty-six cattle were embraced by the mortgage, and would have been bound to take notice of whatever that inquiry would have led to. In the case as it is the purchaser's inquiry would have got him the information that Dundon had only eight head of yearling cattle that were not embraced in the mortgage. His next inquiry would have been, which eight head are free? The objection of appellant is that no particular eight head could be certainly pointed out, and therefore that the purchaser was at liberty to buy not only any eight head of the cattle, but to buy eighteen, or the whole forty-four for that matter. If he did, he would certainly know that the mortgagee was being defrauded. It would be better if the parties would always execute papers of perfect description. But if they don't, the penalty is not a forfeiture of their contracts. So long as they can be enforced, the courts will do it. When they are so imperfectly drawn as that others have been misled thereby to alter their condition, then the party most negligent should suffer most. In this case the form of the mortgage under the facts was such that the purchaser (appellant) could not have learned which eight head of the yearling cattle were unincumbered. Therefore he ought to be permitted to buy any eight of them. Beyond that his claim to protection as against even the negligent mortgagee is absolutely without merit. We conclude that appellant's purchase of eight of the cattle was free from the mortgage lien, and to the extent of their value appellee has no right of action against him. But for the remaining ten appellee should be adjudged their value, and the costs in the circuit court.

Judgment reversed, and remanded for proceedings consistent herewith.   In other respects, the petition for rehearing is overruled.

Judge Hobson dissents.