In the Matter of **AMEX–PROTEIN DE·VELOPMENT CORPORATION, Bankrupt.**

**M. NOLDEN, Trustee of Estate of Bankrupt, Appellant,**

v.

**PLANT RECLAMATION, Appellee.**

No. 73–3119.

United States Court of Appeals, Ninth Circuit.

Sept. 19, 1974.

Harvy W. Hoffman, Jr., Hoffman & Kelly, San Francisco, Cal., for appellant.

Matthew Koppel, San Francisco, Cal., for appellee.

Before MERRILL and TRASK, Circuit Judges, and FERGUSON,* District Judge.

## OPINION

PER CURIAM:

This is an appeal filed pursuant to § 24 of the Bankruptcy Act (11 U.S.C. § 47) from a judgment of the district court holding that a valid and enforceable security interest was created under the provisions of the Uniform Commercial Code.

We adopt the following opinion of the Honorable George B. Harris, United States District Judge for the Northern District of California:

"This matter is on review from an Order of the Referee which declared invalid a security interest claimed by petitioner Plant Reclamation, a creditor of the bankrupt, in certain personal property in the possession of the bankrupt.

"Plant Reclamation had sold equipment to the bankrupt on open account, but on October 16, 1972, substituted a promissory note for the open account indebtedness and caused a financing statement to be signed and filed. The parties intended to create a security interest in the property sold as collateral for the note, and the Referee so found.

"The promissory note included the following line: 'This note is secured by a Security Interest in subject personal property as per invoices.' The words 'subject . . . as per invoices' were handwritten in an otherwise typewritten sentence; the testimony before the Referee established that such words were added by an officer of the bankrupt in order to tie the security interest to the personal property that had been sold to the bankrupt by Plant Reclamation. The invoices referred to in the promissory note were the only ones submitted by Plant Reclamation.

"The financing statement named Plant Reclamation as the secured party and recited that it covered the following types or items of property:

1—Dorr Oliver 100 Sq. Ft. Vacuum Filter

1—Chicago Pheumatic [sic] Vacuum Compression

1—Stainless Steel Augar and Drive

1—Nichols Micro 7″ dryer

1—Tolhurst Centerfuge [sic] 26 inch.

*Discussion*

I. Did the Promissory Note 'Create or Provide for' a Security Interest?

"This issue turns on whether there has been compliance with the following pertinent sections of the California Commercial Code ['Cal.Com.C.'] which govern the creation and enforcement of a security interest:

Section 9105(1)(h):

'Security agreement' means an agreement which creates or provides for a security interest;

Section 1201(37):

'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. * * * *

Section 9203:

(1) Subject to the provisions of Section 4208 on the security interest of a collecting bank and Section 9113 on a security interest arising under the division on sales, a security interest is not enforceable against the debtor or third parties unless

(a) The collateral is in the possession of the secured party; or

(b) The debtor has signed a security agreement which contains a description of the collateral . . . .

* * * *

"The Referee denied the claim of Plant Reclamation on the single ground that no security interest had been 'grant-

---

* The Honorable Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation.

ed' pursuant to the language of the promissory note, as a result of which there had been a failure to comply with the 'creates or provides for' requirement of Cal.Com.C. § 9105(1)(h). The Referee concluded:

> Creative words do not exist in the note before me. The language relied upon is passive, descriptive and informative, much like a financing statement; it is not active or creative; it does not grant or provide for. As such it is analogous to Needle [v. Lasco Industries, Inc., 10 Cal.App.3d 1105, 89 Cal.Rptr. 593 (1970)] and Shelton [v. Erwin, 472 F.2d 1118 (8th Cir. 1973)] rather than Nunnemaker [Transp. Co. v. United California Bank, 456 F.2d 28 (9th Cir. 1972)].

> Accordingly, I conclude that the promissory note is not a security agreement under § 9105(1)(h) and that a security agreement enforceable under § 9203(1)(b) has not been proven. * * * *

■ "The court recognizes that, pursuant to General Order 47 in Bankruptcy, it is bound to accept the Referee's findings of fact unless they are clearly erroneous. Here, however, the facts are not in dispute, and the court remains free to examine the legal conclusions of the Referee and to reject them if they are erroneous. In re Gregory Mobile Homes, Inc., 347 F.Supp. 528, 529 (M. D.Ga.1972); In re Christian and Porter Aluminum Company, 316 F.Supp. 1340, 1342 (N.D.Cal.1970).

"Cal.Com.C. § 9105(1)(h) defines a security agreement as one which 'creates or provides for' a security interest. The Referee found the above-quoted words to be synonymous with the word 'grant' and therefore to require active language. A fair reading of the statute, however, will not bear such a restrictive interpretation.

"It is a matter of basic statutory construction that statutes are to be given

'such effect that no clause, sentence or word is rendered superfluous, void, contradictory, or insignificant.' Ruiz v. Morton, 462 F.2d 818, 820 (9th Cir. 1972). In addition, absent persuasive reasons to the contrary, statutory words are to be given their ordinary meanings. *Id.*

"Cal.Com.C. § 9105(1)(h) nowhere uses the word 'grants' nor is that word a synonym for either 'creates' or 'provides for' or for all of the quoted words together.

"Webster's Third New International Dictionary (3d ed. 1965) defines 'create' as a transitive verb with the following meanings *inter alia*: [1]

> 1: to bring into existence * * * *
> 2: to cause to be or to produce by fiat or by mental, moral, or legal action * * * 3: to cause or occasion * * *

'Provide' is defined as a transitive verb with the following meanings *inter alia:*

> 2a: to fit out or fit up * * * 3: STIPULATE * * *

and as an intransitive verb with the following meanings *inter alia:*

> 1a: to take precautionary measures: make provision—used with *against* or *for* * * * 2: to make a proviso or stipulation * * *

'Grant' is defined as a transitive verb with the following meanings *inter alia:*

> 1a: to consent to carry out for a person: ALLOW, ACCORD * * * 2: GIVE, BESTOW, CONFER * * *

■ "Thus the requirement of Cal. Com.C. § 9105(1)(h) may be satisfied not only when a security interest is caused to be or brought into existence, but also when provision or stipulation is made therefor.

■ "No magic words or precise form are necessary to create or provide for a security interest so long as the minimum

---

1. Webster's New International Dictionary (2d ed. 1939) lists as synonyms for 'create' the words 'make, build, produce, fashion; invent, originate."

formal requirements of the Code are met. *See* Barney v. Rigby Loan & Investment Co., 344 F.Supp. 694, 697 (D. Idaho 1972); Evans v. Everett, 279 N.C. 352, 183 S.E.2d 109, 113 (N.C.1971). This liberal approach is mandated by an expressed purpose of the secured transaction provisions of the Code:

The aim of this Article is to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greater certainty.

\* \* \* \*

The Article's flexibility and simplified formalities should make it possible for new forms of secured financing, as they develop, to fit comfortably under its provisions . . . . . Comment to U.C.C. and Cal.Com.C. § 9101.

"The court in In re Center Auto Parts, 6 U.C.C.Rep. 398 (C.D.Cal.1968) upheld the validity of a promissory note as a security agreement by reading the two together. The promissory note merely recited that, 'This note is secured by a certain financing statement,' and the court found that such was sufficient to 'create or provide for' a security interest within the meaning of § 9105(1)(h).

"A similar result was reached in a case involving the North Carolina version of the U.C.C., Evans v. Everett, *supra,* wherein the debtor gave a promissory note which recited: 'This note is secured by Uniform Commercial Code financing statement of North Carolina' and wherein a similarly worded financing statement was thereafter filed. The court found that since a security agreement could serve as a financing statement, there was no sound reason why the converse should not be true. The court held that the financing statement before it qualified as a security agreement.

By the same token any written agreement signed by a debtor which recites that certain personalty is being encumbered as security for a debt ought to operate as a security agreement under Code § 25–9–105(1)(h). 18 Ark. L.Rev. 30, 34.

While there are no magic words which create a security interest there must be language in the instrument which 'leads to the logical conclusion that it was the intention of the parties that a security interest be created.' In Re Nottingham, 6. U.C.C.Rep. 1197, 1199 (U.S.D.C.Tenn.1969), 183 S.E.2d 113.

"Other cases which have reached a like result and which support the position taken here include In re Wambach, 343 F.Supp. 73, 75 (N.D.Ill.1972), and cases cited therein; Cheek v. Caine & Weiner Company, 335 F.Supp. 1319, 1320 (C.D. Cal.1971); In re Carmichael Enterprises, Inc., 334 F.Supp. 94, 104–105 (N.D. Ga.1971), affirmed, 460 F.2d 1405 (5th Cir. 1972).

"The cases relied upon by the trustee and cited by the Referee are not persuasive. Shelton v. Erwin, *supra,* dealt with the contention that an automobile bill of sale or a title application therefor or both together adequately set forth the intent of the parties to create or provide for a security interest and did in fact create or provide for same under pertinent Missouri statutes. In finding no security agreement, the court simply reaffirmed the principle that a single piece of paper—here the title application and later certificate of title were being treated as a financing statement—could not serve as a security agreement without containing the requirements for such. There was not, as here, two documents: a promissory note which provided for a security interest and a financing statement which gave notice of it.

"Shelton, together with other cases relied upon by the trustee, stem from the ruling in American Card Company v. H. M. H. Co., 196 A.2d 150 (R.I.1963), and therefore share its infirmities. There the court found that a financing statement which did not contain a 'grant' of a security interest could not also serve as a security agreement. There is no

support in legislative history or grammatical logic for the substitution of the word 'grant' for the phrase 'creates or provides for.' This case has been subject to harsh criticism, see G. Gilmore Security Interests in Personal Property § 11.4 at 347–348 (1965); 6D Bender's Uniform Commercial Code Service 2–1680, and it cannot be relied upon as dispositive in the instant case.

■ "Accordingly, the promissory note herein qualifies as a security agreement which by its terms 'creates or provides for' a security interest.

## II. Adequacy of Description of the Collateral

"The trustee urges a second ground for sustaining the Order of the Referee complained of here, namely the inadequacy of the description of the collateral in the promissory note and hence the failure to comply with Cal.Com.C. § 9203(1)(b), *supra.*

Cal.Com.C. § 9110 provides:

> For the purposes of this division any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described. Personal Property may be referred to by general kind or class if the property can be reasonably identified as falling within such kind or class or if it can be so identified when acquired by the debtor. * * * *

"Although the promissory note does not describe the collateral within the four corners of the document such description is provided (1) through incorporation by reference of the subject invoices, as well as (2) through reference to the more specific description of the collateral contained in the financing statement.

"The use of such extrinsic aids is clearly permissible to identify the collateral:

> Under the Uniform Commercial Code there is no reason why parol evidence may not be admitted in aid of the description of the collateral, even where the collateral has been reasonably and sufficiently identified in the security agreement. In many instances, a description in a security agreement may be in general terms; parol evidence should therefore be admissible to explain or supplement the general description, or to resolve ambiguities. [Footnotes omitted.] 44 Cal.Jur.2d Rev. Secured Transactions § 107 at 386.

"The doctrine of incorporation by reference is likewise available in this area:

> There is nothing in the Uniform Commercial Code to prevent reference in the security agreement to another writing for particular terms and conditions of the transaction. There is also nothing in the Uniform Commercial Code to prevent reference in the Security Agreement to another writing for a description of the collateral, so long as the reference in the security agreement is sufficient to identify reasonably what it described. In other words, it will at times be expedient to give a general description of the collateral in the security agreement and refer to a list or other writing for more exact description. In addition, the security agreement could itself consist of separate parts, one a general description of the obligation secured and the rights and duties of the parties, and the other a description of the collateral, both such writings being signed by the debtor and stated to comprise a single security agreement or referring to each other. [Footnotes omitted.] *Id.* § 109 at 387–388.

■ "Thus there is no requirement that the description of the collateral be complete within the four corners of the security agreement or other single document. The description in the security agreement is sufficient, however, if it provides such information as would lead a reasonable inquirer to the identity of the collateral. *See* In re Drane, 202 F. Supp. 221, 223 (W.D.Ky.1962), citing Sparks v. Deposit Bank of Paris, 115 Ky. 461, 74 S.W. 185, 78 S.W. 171, and

cited with approval in In re Anselm, 344 F.Supp. 544, 546 (W.D.Ky.1972). As summarized by one commentator:

> A description need not be so comprehensive that it enables an interested party to determine exactly what the specific collateral is, from a reading of the security agreement or financing statement alone. It is enough if the description allows a third party, aided by information which the security agreement suggests, to identify the property. D. Lee, 'Perfection and Priorities Under the Uniform Commercial Code,' 17 Wyo.L.J. 5–6 (1962).

Instructive here is the decision in In re Nickerson & Nickerson, Inc., 329 F.Supp. 93 (D.Neb.1971), affirmed, 452 F.2d 56 (8th Cir. 1971) on the issue of adequacy of description of the collateral. A security agreement in *Nickerson* described the collateral therein as:

> All gifts, novelties, souvenirs, and other merchandise inventory held for resale including but not limited to the following: See attached schedules for a list of property covered by this Security Agreement.

The financing statement filed in connection with the security agreement described the collateral in different terms:

> . . . gifts, novelties, souvenirs, and other merchandise inventory held for resale and situated in debtor's stores located in [each particular] state.

The appellate court held that the description of the collateral in the security agreement was adequate:

> As we have noted, the evidence establishes that the parties, by attaching the financing statements to the security agreement, incorporated the clarifying language of the financing statement into the security agreement, and clearly created a lien in Lugene's [the secured party's] favor upon the inventory in all of Nickerson's [the debtor's] stores. 452 F.2d 57.

"A similar conclusion was reached in In re Center Auto Parts, *supra*, at 399–400, wherein the court upheld the adequacy of the description of the collateral in a security agreement through reference to a financing statement by incorporation and the resulting suggestion of inquiry or the means of identification.

■ "The trustee properly cites Mitchell v. Shepherd Mall State Bank, 324 F.Supp. 1029, 1032 (W.D.Okl.1971), affirmed, 458 F.2d 700 (10th Cir. 1972) for the proposition that the description of collateral contained in a financing statement may have the effect of restricting the security interest created in a security agreement but cannot enlarge it. In the instant case a reference to the more specific description contained in the financing statement does operate to restrict, rather than to enlarge, the security interest between the parties.

"A case relied upon by the trustee, Rusch Factors, Inc. v. Passport Fashion Ltd., 1 U.C.C. 507 (N.Y.Sup.Ct.1971), may be readily distinguished. There the parties executed a security agreement (trust receipt) whereby the trustee acknowledged receipt of:

> the documents listed on the obverse hereof representing the goods therein specified (which, together with all improvements or additions to or accessories to or products of such goods, are all hereinafter called 'collateral') and . . . the existence of . . . a security interest in favor of [Itoh] in the "collateral." *Id.* at 507–508.

The parties stipulated as to the nature of the subject documents, but in fact no such documents had been listed or attached to the security agreement. The court concluded that because of the absence of the documents, a reasonable inquirer, upon reviewing the security agreement with or without the financing statement, would not have discovered sufficient information to provide an adequate description of the collateral. *Id.* at 510.

"*Rusch* is pertinent here because it approves the policy of looking beyond the security agreement to the financing statement in order to ascertain the de-

scription of the collateral, but it is distinguishable on its holding because there the court found an absence of documentation. Here, however, the invoices were available but were not claimed to be physically attached to the security agreement; only if no invoices existed or could be found would the instant case be analogous to *Rusch.*

"This last conclusion is bolstered by J. K. Gill Company v. Fireside Realty, Inc., 262 Or. 486, 499 P.2d 813 (1972), a case similar to *Rusch* which cited and relied upon *Rusch* as authority for a similar conclusion. A security agreement executed therein described the collateral as "furniture as per attached listing." No listing was in fact attached. The financing statement made the same description of the collateral; again no listing was attached. The court noted, however, that had the subject invoices which evidenced the furniture been attached to the security agreement, the description of the collateral would have been adequate, thus supporting the theory of description through incorporation by reference.

"It is manifest that the reference to the invoices in the subject promissory note, coupled with the existence of a financing statement containing a more specific description, satisfies the requirements of Cal.Com.C. §§ 9203(1)(b) and 9110.

III. Validity of the Oral Agreement

"Plant Reclamation argued before the Referee, and has urged on this review, that its security interest can also be found to exist in the oral agreement of the parties which then became memorialized in the promissory note. Plant Reclamation finds this theory available under Nunnemaker Transp. Co. v. United California Bank, *supra.*

"This court has been unable to find direct authority for the position taken by Plant Reclamation, but the Referee did not pass on this issue and, in view of the opinion of this court expressed here-

inabove, no resolution need be made of it.

*Conclusion*

"For the reasons stated above, the petition of Plant Reclamation is hereby granted, and the Order of the Referee Declaring Lien Invalid, dated April 10, 1973, is hereby reversed. It is so ordered."

The judgment is affirmed.