**In re Mark C. TYLER, fdba The Sun Shop, Debtor.**

**Paul LANSDOWNE, Trustee, Plaintiff,**

v.

**FINANCEAMERICA PRIVATEBRANDS, INC., Defendant.**

**Bankruptcy No. 681–06383.
Adv. No. 682–7017.**

United States Bankruptcy Court,
D. Oregon.

Oct. 1, 1982.

Wilson C. Muhlheim, Eugene, Or., for plaintiff.

Dwight C. Purdy, Springfield, Or., for defendant.

### MEMORANDUM OPINION

C.E. LUCKEY, Bankruptcy Judge.

Plaintiff, trustee of the debtor in a voluntary Chapter 7 Bankruptcy Code case, Mark C. Tyler, formerly doing business as The Sunshop, has filed his complaint in this adversary proceeding seeking a judgment for declaratory relief declaring that the defend-

---

ant, FinanceAmerica Private Brands, Inc., has no security interest in property of the debtor; that defendant is an unsecured creditor; and granting plaintiff authority to sell the property of the debtor free and clear of any claim of defendant. Defendant answered with prayer that the Court declare and adjudge that the defendant has a security interest in property of the debtor. Pre-trial Order was entered and trial held.

Debtor was purchasing inventory from Sony for resale and the flooring was financed by the defendant. The security agreement ran to Sony, but the debtor's payments were made to the defendant and defendant monitored the inventory on behalf of Sony before March, 1978, and after.

On April 6, 1978, Sony and defendant entered into an agreement between themselves to restructure the flooring plan financing procedures relating to Sony's outlets, including the debtor. The agreement provided for "New Finance Transactions" being defined as those for which defendant made advances to Sony after April 1, 1978.

The treatment given the outstanding security interests held by Sony with reference to property sold by it to the debtor in the agreement is stated in paragraph 6 A, B and C of the agreement:

"6. A. Sony shall assign to FA all security interests held by it against Existing Dealers who have utilized the Sony Floor Plan as of the date of this Agreement, and Sony shall also assign to FA its interest as a chattel mortgagee in the jurisdiction of Louisiana.

"B. Contemporaneously with the assignments to FA as provided in 6.A. above, FA will pay and advance to Sony an amount equal to the outstanding principal balance of all Existing Dealer obligations owing to Sony under Old Finance Transactions plus any accrued and unpaid charges owing thereon; upon receipt of such payment, Sony will assign to FA all of its interest and claim against such Existing Dealers.

"C. For the purpose of enabling FA to enter into New Finance Transactions with Existing Dealers, Sony will cause its Existing Dealers to acknowledge and agree to the substitution of FA for Sony under existing dealer documents utilized in the Sony Floor Plan, and further acknowledge that from and after a date certain, FA will make advances to Sony for and on behalf of those Existing Dealers for Sony Merchandise thereafter purchased by them from Sony."

The security agreement between Sony and the debtor provided, *inter alia:*

"FIRST: As security for any and all liabilities and obligations, monetary or otherwise, direct or indirect, absolute or contingent, past, present or future, owed by Debtor to Secured Party for merchandise purchased by Debtor from Secured Party pursuant to the Plan, for service and late charges payable by Debtor to Secured Party pursuant to the Plan and for all attorneys' fees, court costs and collection expenses incurred in collecting any such liabilities and obligations, whether evidenced by instruments, other evidence of indebtedness, by open account on Secured Party's books of account or otherwise (hereinafter collectively referred to as the "Obligations"). Debtor hereby grants Secured Party a security interest in the following property and the proceeds thereof (hereinafter collectively referred to as the "Collateral"):

"(A) All of Debtor's presently owned or hereafter acquired inventory (including, but not limited to, radios, television receivers, high-fidelity components, phonographs, electronic equipment and apparatus of every kind, nature and description bearing the trademark or tradename "SONY") sold at any time heretofore, now or hereafter by Secured Party to Debtor, whether in the form manufactured or as products or accessories and whether sold pursuant to the Plan or otherwise;

"(B) All accounts receivable, accounts, contract rights, chattel paper, documents and general intangibles which heretofore arose or which shall hereafter arise from sales or other dispositions of the inventory hereinbefore referred to in part (A) above;

"(C) All accessions, products, proceeds, replacements, substitutions and additions to any of the items hereinbefore referred to in parts (A) and (B) above.

\*　　\*　　\*　　\*　　\*　　\*

"TENTH: This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties hereto.

"ELEVENTH: This Agreement may not be modified, altered or amended in any manner whatsoever, except by a further agreement in writing signed by all of the parties hereto.

"TWELFTH: This Agreement contains all of the understandings, promises and undertakings of the parties hereto. All prior understandings and agreements, oral or written, heretofore entered into between the parties hereto are merged herein."

Plaintiff urges that technical defects in the changed procedures between Sony and defendant entitle the trustee to defeat the lien claim of the defendant. The alleged defects relied upon are language in the security agreement with Sony granting the security interest "for any and all obligations ... owed by Debtor to Secured Party for merchandise purchased by Debtor from Secured Party, and the failure of the defendant to obtain an express modification of that language which the plaintiff urges as necessary under the terms of the security agreement and for "future advances" made by the defendant for flooring of the Sony merchandise. It is contended that the language of the security agreement describes as collateral merchandise sold to the debtor by Sony and that the new flooring plan agreement constitutes the defendant as seller instead of Sony and that because there is no security agreement describing the collateral as property sold to the debtor by defendant, the defendant has no defined collateral. The security agreement between Sony and the debtor recited that the "Debtor desires to make purchases from Secured Party pursuant to Secured Party's Dealer Floor Plan as in effect from time to time".

The financing statement filed to perfect the security agreement showed Sony as the secured party "c/o FinanceAmerica Private Brands, P.O. Box 750, Daly City, California 94017". The security agreement showed Sony's address at 9 West 57 Street, New York, New York 10019.

Payments made were to the defendant pursuant to invoices sent the debtor pursuant to the flooring plan.

The debtor opened a second location in 1977 and on August 3, 1977 the debtor signed a continuation of the previous financing statement, but the continuation filing showed the Secured Party as being FinanceAmerica Private Brands. On August 8, 1977, Sony recorded an assignment of its security agreement to FinanceAmerica, which referred to the original financing statement filed by Sony. Testimony was undisputed that before the agreement changing the flooring plan, FinanceAmerica had in connection with the financing arrangement monitored the debtor's inventory.

The debtor also indicated his knowledge of the defendant's secured status by directing his insurance carrier to send a copy of the insurance policy with loss payable clause favoring the defendant FinanceAmerica Private Brands.

The plaintiff urges that a registered letter sent by the defendant to the debtor June 20, 1978, notifying the debtor of the assignment of Sony's interest in the security agreement to the defendant was not signed, and therefore there was no effective modification or assignment of the security agreement according to its terms.

These technical fly specks in the transaction have made difficult determination of the rights of the parties, particularly when it could be expected that a financing concern providing financing on the scale being done by the defendant would touch all bases to remove all doubt of its right to a security interest.

The determination has been made more wrenching because of the exhaustive, able and pursuasive legal memoranda submitted by counsel on both sides.

There is clearly enough, however, under a liberal construction concept to show that the defendant is entitled to enforce its security interest. The objective documentary evidence shows treatment of the defendant by the debtor as the secured party, within the interaction of the documents including the reference of the security agreement to the "Secured Party's Dealer Floor Plan as in effect from time to time", the debtor's objective intent with relation to the interests of the parties is clear.

Creditors are entitled to adequate notice of the security interests. The filed documents could have led them only to the assigned security agreement. If by reason of some imperfection of the security arrangement a creditor with notice of the agreement and its assignment is placed in a more favorable position, he has certainly not been injured.

The Court is persuaded that O.R.S. 71.1020(1) and (2)(b) contemplate liberal construction particularly in the complex area of varying flooring plans where the facts of the case do not allow the fraudulent creation of a security interest or prejudice to creditors for lack of notice, and that defendant is entitled to the declaratory relief sought. This concept is fortified in this circuit by the case of *In re Amex-Protien Development Corporation,* 504 F.2d 1056 (9th Cir.1974); *In re Numeric Corp,* 485 F.2d 1328 (1st Cir., 1974), and *Matter of Bollinger Corp.,* 614 F.2d 924 (3rd Cir., 1980).

This Opinion contains the Court's Findings of Fact and Conclusions of Law and they will not be separately stated.

Each party shall bear his or its own costs and attorney fees herein.

Separate Judgment consistent herewith will be entered.