Opinion
 

 CHRISTIAN, J.
 

 John Komas appeals from a judgment which upheld a third party claim by respondent Small Business Administration (SBA)
 
 *812
 
 and restrained an execution sale of assets of appellant’s judgment debtor, Future Systems, Inc., a Delaware corporation.
 

 After the sheriff had seized the debtor’s assets, Paul J. Calleja, an employee of SBA, delivered to the sheriff a verified third party claim, pursuant to section 689 of the Code of Civil Procedure, asserting a security interest in the debtor’s machinery and equipment. Attached to the verified third party claim were a “Financing Statement” which had been filed with the Secretary of State by Future Systems, Inc. and a later “Continuation Statement” filed by the United California Bank. The basis of the third party claim was a $150,000 loan from the United California Bank to Future Systems, Inc. (FSI) which had been guaranteed by the SBA: On April 28, 1972, FSI had executed a promissory note for $150,000 to United California Bank and allegedly granted a security interest in the property in question as security for that note. The note, with a balance due of $68,505.70, was subsequently assigned to the SBA.
 

 Appellant contends that the documents supporting respondent’s third party claim were not properly before the court. Appellant contends that the SBA’s failure to formally introduce evidence at the hearing on the third party claim constituted a failure to meet its burden of proof under section 689 of the Code of Civil Procedure. This contention must be rejected. The complaint and supporting documents were treated as part of the record before the trial court by both court and counsel, and it is clear that the trial court considered the documents in its decision. The failure to formally and expressly offer the documents into evidence is not necessarily fatal, where the court and both parties treat the documents as if they were in evidence.
 
 (Estate of Connolly
 
 (1975) 48 Cal.App.3d 129, 132, fn. 4 [121 Cal.Rptr. 325];
 
 Walsh
 
 v.
 
 Walsh
 
 (1952) 108 Cal.App.2d 575, 579 [239 P.2d 472]; Witkin, Cal. Evidence (2d ed. 1966) Introduction of Evidence at Trial, § 1142, p. 1060; see also
 
 Waller
 
 v.
 
 Waller
 
 (1970) 3 Cal.App.3d 456, 465 [83 Cal.Rptr. 533].)
 

 Appellant concedes that,
 
 if
 
 any security interest was created by the $150,000 loan transaction between United California Bank and Future
 
 *813
 
 Systems, Inc., that security interest was “perfected” because a sufficient financing statement was filed with the Secretary of State. It is appellant’s contention, however, that no security interest ever “attached” to the collateral which was levied upon under the writ of execution. Appellant contends that none of the documents before the trial court constituted an adequate “security agreement” creating or providing for a security interest in the collateral.
 

 Under section 9105, subdivision (1)(l), of the California Uniform Commercial Code, a “security agreement” is an agreement which “creates and provides for” a security interest. Section 9203 specifies the requisites for the attachment and enforceability of a security interest. Section 9203, subdivision (l)(a)-(c), provides in relevant part: “. . . a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless (a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral. .. and (b) Value has been given; and (c) The debtor has rights in the collateral.” In other words, there must be a binding security agreement in order to make the security interest enforceable. Where there is no security agreement, the filing of a financing statement is a nullity.
 
 (Needle
 
 v.
 
 Lasco Industries, Inc.
 
 (1970) 10 Cal.App.3d 1105, 1108 [89 Cal.Rptr. 593]; 4 Anderson, Uniform Commercial Code (2d ed. 1971) § 9-204:4, p. 175.)
 

 The order in which the three events occur, which are requisite to attachment of the security interest, is immaterial. But a security interest cannot attach until the parties have so agreed, value is given, and the debtor has rights in the collateral. (See Warren, 3 Cal. Commercial Law (Cont.Ed.Bar 1966) § 2.3, pp. 42-43.) Only the first requisite to attachment is disputed here—whether there was an agreement that a security interest attach.
 

 Respondent conceded that the financing statement, standing alone, did not satisfy the requisites for a security agreement because that document does not recite that the parties intended to create a security interest in the collateral. (See
 
 Needle
 
 v.
 
 Lasco Industries, Inc., supra,
 
 10 Cal.App.3d 1105, 1108; Warren, 3 Cal. Commercial Law (Cont.Ed.Bar 1966) § 2.17, pp. 56-57.) But an effective security agreement can be found when a financing statement is considered together with other documents. (See
 
 In re Numeric Corp.
 
 (1st Cir. 1973) 485 F.2d 1328, 1332;
 
 In re Carmichael Enterprises, Inc.
 
 (N.D.Ga. 1971) 334 F.Supp. 94, affd.
 
 *814
 
 per curiam (5th Cir. 1972) 460 F.2d 1405;
 
 Evans
 
 v.
 
 Everett
 
 (1971) 279 N.C. 352 [183 S.E.2d 109];
 
 In re Center Auto Parts
 
 (C.D.Cal. 1968) 6 U.C.C. Rep. Serv. 398.) In this regard, the court stated in
 
 In re Numeric Corp., supra,
 
 485 F.2d at page 1331: “we have little difficulty concluding that a separate formal document entitled ‘security agreement’ is riot always necessary to satisfy the signed-writing requirement of § 9-203(1 )(b). The draftsmen of the UCC ascribed two purposes to - that requirement. One purpose was evidentiary, to prevent disputes as to precisely which items of property are covered by a secured interest.
 
 See
 
 Uniform Commercial Code § 9-203, Comment 3; J. K. Gill Co. v. Fireside Realty Inc., 262 Or. 486, 488, 499 P.2d 813 (1972). The second purpose of the signed-writing requirement is to serve as a Statute of Frauds, preventing the enforcement of claims based on wholly oral representations.
 
 See
 
 Uniform Commercial Code § 9-203, Comment 5.
 

 “Given these two limited purposes of § 9-203(1 )(b), and the flexible definitions of ‘security agreement’ and ‘agreement’ found elsewhere in the Code, there seems to be no need to insist upon a separate document entitled ‘security agreement’ as a prerequisite for enforcement of an otherwise valid security interest. A writing or writings, regardless of label, which adequately describes the collateral, carries the signature of the debtor, and establishes that in fact a security interest was agreed upon, would satisfy both the formal requirements of the statute and the policies behind it.
 
 See
 
 Nunnemaker Transp. Co. v. United Cal. Bank, 456 F.2d 28, 31-32 (9th Cir. 1972); In re United Thrift Stores, Inc., 363 F.2d 11, 14 (3d Cir. 1966); In re Carmichael Enterprises, Inc., 334 F.Supp. 94, 105 (N.D.Ga.1971), aff'd per curiam, 460 F.2d 1405 (5th Cir. 1972); In re Fibre Glass Boat Corp., 324 F.Supp. 1054, 1055-56 (S.D.Fla.), aff'd per curiam, 448 F.2d 781 (5th Cir. 1971); Evans v. Everett, 279 N.C. 352, 359-360, 183 S.E.2d 109 (1971).”
 

 There is no language in the Commercial Code stating that the terms of the security agreement must be included in a single document. In fact, under its broad definition of “agreement,” the code indicates otherwise: “ ‘Agreement’ means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance . . .” (Cal. U. Com. Code, § 1201, subd. (3); see
 
 In re Wambach
 
 (N.D. Ill. 1972) 343 F.Supp. 73, 75, affd. 484 F.2d 572; 4 Anderson, Uniform Commercial Code (2d ed. 1971) § 9-203:6, p. 156.) Thus, the question is whether the documents presented to the trial court, taken together, showed an
 
 *815
 
 agreement between the parties that the creditor would have a security interest in the property.
 

 On March 21, 1972, Future Systems, Inc. applied for a $150,000 loan from United California Bank, using a standard form of contract supplied to the bank by the SBA. Part 3 of the loan application is entitled “Summary of Collateral Offered”; FSI listed among the collateral “Business machinery and equipment” and “Business furniture and fixtures.” Part 3 also contains the notation, “Pledged as security for loan against receivables.” Part 4 of the loan application provides, “As Additional Security, Payment of the Loan Will Be Guaranteed By; . . .” and
 
 lists
 
 the names, addresses and net worth of four guarantors of the loan. Section B(16) of the application requires that the loan applicant attach a description of the collateral offered. The document is signed on page 3, by both the president and controller of the debtor, Future Systems, Inc. Page 4 of the loan application, completed by the bank, also identifies several items as collateral.
 

 The loan application itself thus contains a sufficient description of the collateral, is signed by the debtor, and contains language indicating an intent to provide for a security interest in the described collateral. Moreover, an officer of FSI wrote to SBA a letter, which accompanied the loan application. It recited that “the assets of Future Systems, Inc. in addition to the guarantors listed in the application will be sufficient to cover [the loan].”
 

 The promissory note given by FSI states that “The term ‘Collateral’ as used in this Note shall mean any funds, guarantees, or other property or rights therein of any nature whatsoever or the proceeds thereof which may have been, are, or hereafter may be, hypothecated, directly or indirectly by the undersigned or others, in connection with, or as security for, the Indebtedness or any part thereof. The Collateral, and each part thereof,
 
 shall secure the indebtedness
 
 and each part thereof. . . . [¶ Upon the nonpayment of the Indebtedness, or any part thereof, when due, whether by acceleration or otherwise, Holder is empowered to sell, assign, and deliver the whole or any part of the Collateral. . . . [¶ The undersigned agrees to take all necessary steps to administer, supervise, preserve, and protect the Collateral; and regardless of any action taken by Holder, there shall be no duty upon Holder in this respect.... [¶ The security rights of Holder and its assigns hereunder shall not be impaired by ... . [¶ This promissory note is given to secure a loan which SBA is making or in which it is participating ....”
 

 
 *816
 
 The financing statement filed with the Secretary of State names United California Bank as the secured party; it is signed by the debtor, Future Systems, Inc., and states that the financing statement covers the following types of items of property: “All inventory, raw materials, work in progress, or materials used or consumed in debtor’s business, whether now owned or hereafter acquired, and all products thereof, whether in the possession of the debtor, warehouseman, bailee, or any other person. All receivables, accounts, contracts and rights arising from sale or leasing of merchandise or service to third party debtors, including returns and repossessions thereunder, all equipment, leasehold improvements, furniture and fixtures now owned or hereafter acquired.”
 

 No special form is necessary to create or provide for a security interest
 
 (In re Amex-Protein Development Corp.
 
 (9th Cir. 1974) 504 F.2d 1056, 1058.) It is sufficient if the parties use language which leads to the conclusion that it was the intention of the parties that a security interest be created.
 
 (In re Amex-Protein Development Corp., supra,
 
 504 F.2d at p. 1059; 4 Anderson, Uniform Commercial Code (2d ed. 1971) § 9-203:7, pp. 157-158.) In the present case, the financing statement, loan application, promissory note and other documents, taken together, establish that there was an agreement to create or provide for a security interest.
 
 (In re Amex-Protein Development Corp., supra,
 
 504 F.2d 1056;
 
 In re Wambach, supra,
 
 343 F.Supp. 73;
 
 Cheek
 
 v.
 
 Caine & Weiner Co.
 
 (C.D.Cal. 1971) 335 F.Supp. 1319.)
 

 Affirmed.
 

 Caldecott, P. J„ and Rattigan, J„ concurred.