**CASCO BANK & TRUST COMPANY**

v.

**Dominique CLOUTIER and Carol V. Cloutier.**

Supreme Judicial Court of Maine.

March 16, 1979.

Thompson, Willard & McNaboe by David M. Hirshon, (orally), U. Charles Remmel, II, Portland, for plaintiff.

Southard, Hunt & Hebert by Stephen T. Hayes, (orally), George H. Hunt, Augusta, for defendants.

Before McKUSICK, C. J., and WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ., and DUFRESNE, A. R. J.

WERNICK, Justice.

Defendants Dominique and Carol V. Cloutier have appealed from an order of the Superior Court (Cumberland County) pursuant to which summary judgment was entered in favor of plaintiff Casco Bank & Trust Company (the Bank) on the Cloutiers' counterclaim. The appeals are limited to the part of the summary judgment that denied a claim of conversion. Arising from a loan transaction in which provision was made for a security interest in the Bank in certain property of the Cloutiers, the conversion claim challenges the Bank's right to enforce the security interest by seizing, and selling, the property. More specifically, the Cloutiers contend that the security interest was not "enforceable" because there had not been compliance with formal requisites prescribed by 11 M.R.S.A. § 9–203(1)(b) (1964).

As will more clearly appear below, we are called upon to elucidate the policies served by those formal requisites in order to determine the ultimate question raised by the appeals: whether and under what circumstances, consistently with such policies, multiple documents can be read together as the "debtor['s] . . . signed . . . security agreement which contains a description of the collateral . . . ." We also confront a preliminary procedural attack on Carol Cloutier's right to appeal, a question we address before turning to the substantive matters.

### 1.—The Viability of Carol Cloutier's Appeal.

On July 7, 1977 the Bank instituted a civil action in the Superior Court (Cumberland County) against Dominique Cloutier to recover an unpaid balance alleged due on a promissory note. Although his answer to the complaint included a counterclaim naming him and his wife Carol as the counterclaimants, the Bank's reply treated Dominique Cloutier as the only counterclaimant. When the Bank subsequently amended its complaint to add Carol, a co-signor of the promissory note, as a defendant, her answer to the amended complaint neither newly asserted a counterclaim nor referred to the one previously filed.

On November 4, 1977, the Bank moved for summary judgment on the amended complaint. Before a decision was made on this motion, the Cloutiers moved to amend their counterclaim, to add the allegation that the Bank had "converted to its own use certain personal property belonging to *Defendants* . . . ." (emphasis added)

On December 15, 1977 the motion for summary judgment was granted, and in accordance with the Justice's order, judgment on the amended complaint was entered in favor of the Bank against the Cloutiers in the sum of $23,524.18.

Several months later, on May 22, 1978 the Bank moved for summary judgment in its favor "against the *Defendants* on *their* counterclaim . . . ." (emphasis added) The motion was granted on June 30, 1978, and on the same day judgment was entered on the counterclaim against both Dominique and Carol Cloutier.

The record reveals that the Bank supported its motion for summary judgment on the counterclaim by filing an affidavit specifically addressing the issues raised by the conversion claim and, further, that the Bank participated in arguing the conversion

issues to the presiding Justice. The record discloses that the Justice considered the conversion claim and that his decision on the counterclaim was intended to be an adjudication of all of the issues it raised, including the conversion cause of action alleged by the purported amendment to it.[1]

The Bank asserts that Carol Cloutier's appeal must be dismissed because she did not utilize proper procedure to become a counterclaimant. The premise of this contention is the assumption that even though Carol was named as a counterclaimant in the counterclaim included in the answer filed by Dominique, she did not thereby become a counterclaimant since she was not yet a defendant in the original action who had been served with a pleading.

We find this underlying premise erroneous and therefore reject the claim that Carol Cloutier's appeal is not viable.

Rule 13(h) M.R.Civ.P., entitled "Joinder of Additional Parties", states:

"Persons other than those made parties to the original action may be made parties to a counterclaim . . . in accordance with the provisions of Rules 19 and 20."

Rule 13(h) M.R.Civ.P. is identical to Rule 13(h) F.R.C.P., and Rules 19 and 20 M.R. Civ.P. are in substance the same as Rules 19 and 20 F.R.C.P. Accordingly, we deem the decision of the United States District Court in *Lanier Business Products v. Graymar Company*, 342 F.Supp. 1200 (D.Md.1972), which is based on reasoning that we find most persuasive, to be strong authority against the Bank's position.

■ Although the ambiguity in the words "be made" in Rule 13(h) may indicate need of a motion for leave of court and a court order of joinder, the ambiguity is resolved by the authorization in Rule 20(a) for "all persons" to join "as plaintiffs" to assert

"any right to relief . . . in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences",

provided that the assertion of such right will give rise to a "question of law or fact common to all" the persons so joining. As *Lanier Business Products, supra,* clarifies, such permissive joinder of parties as "plaintiffs" does not apply exclusively to joining in the complaint by which a civil action is commenced. Relative to a counterclaim, the claiming party is regarded as a "plaintiff." Accordingly, the authorization in Rule 20(a) for the joinder of "plaintiffs" extends to counterclaimants who, therefore, are authorized to join in the bringing of a counterclaim in the same manner as persons are authorized to join in a complaint as "plaintiffs"; leave of court and a court order of joinder are not requirements in either instance.

■ Here, then, pursuant to Rules 13(h) and 20(a) in combination, the counterclaim included in the answer of Dominique effectively joined Carol as a counterclaiming party, despite the absence of an order of court,[2] provided that the other requirements of Rule 20(a) were satisfied. It is not disputed that these other requirements were met; the rights asserted by the Cloutiers plainly arose out of the "same transaction, occurrence, or series of transactions or occurrences" and give rise to a "question of law or fact common to . . ." both of them.

The appeal of Carol V. Cloutier is properly before us.

---

1. Thus, even though the record reveals no express ruling granting defendants' motion to amend their counterclaim and no formal order that the counterclaim was amended to include the claim for conversion, we take defendants' counterclaim to have been effectively so amended by consent.

2. We may note that were such an order of court necessary, we could deem it to have been consensually provided here because the plaintiff's motion for summary judgment on the counterclaim expressly asked for such judgment against *both* Dominique Cloutier and Carol V. Cloutier, and it was *that motion* which was granted and pursuant to which summary judgment was entered on the counterclaim against both defendants.

### 2.—The Merits of the Appeals.

Since the appeals are from a summary judgment, we are concerned with the undisputed facts that relate to the conversion claim. They are as follows.

On September 4, 1975, Dominique Cloutier signed, and filed with Casco-Northern National Bank, a Small Business Administration (SBA) loan application in which he requested approval of a loan in the principal amount of $25,000.00. The application stated as further information that the loan was to provide money for the purchase of a laundromat operation situated in Winthrop, Maine, and that a lending institution would be participating with the SBA in the loan. The application also listed, as contemplated collateral for the loan, business machinery and equipment as well as accounts receivable and supplies.

On November 28, 1975, Dominique and Carol Cloutier signed a promissory note in the principal amount of $25,000.00 payable to Casco-Northern National Bank. The note was delivered to Casco-Northern, which subsequently assigned it to Casco Bank & Trust Company. On November 28, 1975 Dominique Cloutier also signed, as did an officer of Casco-Northern, a standard form financing statement containing the information that (1) Dominique Cloutier was the debtor, (2) Casco-Northern National Bank was the secured party, and (3) the property covered by the financing statement was

> "[a]ll machinery and equipment (excluding automotive) furniture and fixtures now owned, acquired through loan proceeds and hereafter acquired—located in or . . . [appurtenant] to property commonly known as Norge Village in Winthrop, Maine."

This financing statement was filed on December 1, 1975 in the office of the Secretary of State.

Using the proceeds of the loan that was evidenced by their promissory note, the Cloutiers purchased, on November 28, 1975, the "Norge Village" laundromat in Winthrop, Maine. They received a bill of sale transferring ownership to them of the machinery, equipment, furniture and fixtures involved in that operation.

Of all the documents relating to this case defendant Carol V. Cloutier signed only one, the promissory note.

The Cloutiers subsequently ceased making the payments required by their promissory note. On March 21, 1977, Casco Bank & Trust Company notified them that they were in default on their promissory note, seized the contents of their "Norge Village" laundromat operation and, later, after notification to Dominique Cloutier, sold the seized property at public auction. Applying the net proceeds realized from the sale, $2,623.25, toward payment of the promissory note, the Bank brought this action to recover the deficiency balance remaining due on the note.

The gravamen of the counterclaim for conversion is that the Bank's seizure, and sale, of the contents of the laundromat was wrongful because, say the Cloutiers, there had been a failure to comply with the formal requisites prescribed by 11 M.R.S.A. § 9–203(1)(b) as minimally necessary conditions of the *enforceability* of a "security interest."

As it read at the times relevant here, 11 M.R.S.A. § 9–203(1)(b) provided in pertinent part:

> "[A] security interest is not enforceable against the debtor or third parties, unless . . . [t]he debtor has signed a security agreement which contains a description of the collateral . . . ."

By ordering summary judgment against the Cloutiers on their counterclaim, taken as amended to include a cause of action for conversion, the presiding Justice must be deemed to have decided that it was established as a matter of law that each of the Cloutiers, as a debtor, had "signed a security agreement which contain[ed] a description of the collateral . . . ."

Beyond the general statement that the presiding Justice erred in ordering summary judgment against them on their conversion claim, each appellant makes concessions which cause the precise issue of the

appeals to be framed more narrowly. Acknowledging that the promissory note signed by each of them was a "security agreement" within the meaning of 11 M.R.S.A. § 9–105(h), to wit, "an agreement which creates or provides for a security interest", each appellant maintains that neither the promissory note nor any other document proffered shows compliance with the additional requirement of Section 9–203(1)(b): that "a description of the collateral" be "contain[ed]" in the debtor's "signed" security agreement.

As to this key point of dispute, the Bank adds a further twist by conceding that the promissory note did not, within its own confines, "contain . . . a description of the collateral . . . ." The Bank seeks to prevail by arguing that another document (or documents) may be joined with the promissory note to constitute a documentary unit which, appropriately interpreted, constitutes each appellant's "signed . . . security agreement . . . contain[ing] a description of the collateral . . . ."

Thus, the precise issues we must decide are (1) whether other documents, and if so, which (if any) may be combined with the promissory note as allegedly satisfying the formal requisites prescribed by Section 9–203(1)(b); and (2) if such a composite may be formed here, does the proper interpretation of it show that each defendant "signed a security agreement which contains a description of the collateral . . .?"

Considering these questions, we reach different decisions as to each appellant. We deny Dominique Cloutier's appeal but sustain his wife Carol's.

We begin analysis with a point we take to be well settled, and not really in dispute here, that

"there is no requirement that the description of the collateral be complete within the four corners of the security agreement or other single document."

See *In Re Amex-Protein Development Corp.*, 504 F.2d 1056, 1060 (9th Cir. 1974); *Komas v. Small Business Administration,* 71 Cal.App.3d 809, 139 Cal.Rptr. 669 (C.A. 1st Dist., 1977). Accord: *In Re Numeric Corp.,* 485 F.2d 1328 (1st Cir. 1973); *Nunnemaker Transportation Co. v. United Cal. Bank,* 456 F.2d 28 (9th Cir. 1972); *In Re Carmichael Enterprises, Inc.,* 334 F.Supp. 94 (N.D.Ga. 1971), aff'd. per curiam, 460 F.2d 1405 (5th Cir. 1972); *In Re Fibre Glass Boat Corp.,* 324 F.Supp. 1054 (S.D.Fla.1971), aff'd. per curiam, 448 F.2d 781 (5th Cir. 1971); *Evans v. Everett,* 279 N.C. 352, 183 S.E.2d 109 (1971); *In Re United Thrift Stores, Inc.,* 363 F.2d 11 (3rd Cir. 1966).

However, where more than one document is proffered to establish the enforceability of a security interest, sound analysis requires that we make a threshold inquiry as to the criteria by which we determine, consistently with the policies embodied in the formal requisites of Section 9–203(1)(b), which separate documents may qualify for composite treatment.[3]

Comment 3 to Section 9–203 states:

"One purpose of the formal requisites stated in subsection (1)(b) is evidentiary. The requirement of *written record* minimizes the possibility of future dispute as to the terms of a security agreement and as to what property stands as collateral for the obligation secured." (emphasis added)

Comment 5 makes a further point:

"The formal requisites stated in this Section are not only conditions to the enforceability of a security interest against third parties. They are in the nature of a Statute of Frauds. Unless the secured party is in possession of the collateral, his security interest, absent a writing which satisfies subsection (1)(b), is not enforceable even against the debtor . . . ."

---

**3.** Thus, where more than one document must be taken into account to decide whether there has been compliance with the formal requisites prescribed by Section 9–203(1)(b) as minimal conditions precedent to the enforceability of a "security interest", the analysis must address two distinct questions: (1) at the threshold, what documents, according to what standards of judgment, may form the matrix for interpretation; and (2) that documentary matrix having been determined, what does it properly signify?

The wording of Comment 5 exposes an ambiguity as to the applicable scope not only of the "frauds" policy stated in Comment 5 but also of the evidentiary policy to which Comment 3 alludes. Are these policies applicable *solely* in relation to a "security agreement" as in fact made by the debtor and to a security interest as sought to be enforced against the debtor? Or, rather, because Section 9–203(1)(b) prescribes *exactly the same* formal requisites as minimally necessary conditions of the enforceability of a security interest against the debtor *and* third parties, is it essential that whenever compliance with the formal requisites is at issue, the "frauds" and evidentiary policies must be taken into account to protect the interests not only of the debtor but also of third parties? This ambiguity produces significantly different consequences depending upon which side of it a court adopts in formulating its answer to the threshold question of how to construct the underlying subject-matter for interpretation.

If a court proceeds on the alternative that the "frauds" and evidentiary policies apply only to the enforceability of a security interest against the debtor, without need to consider further the impact on the protection of third party interests, documents could qualify to form the matrix to be interpreted if, *from within their own four corners,* i. e., without assistance by extrinsic evidence (more particularly oral evidence as to the contents of the loan transaction) the documents reveal that: (1) the debtor signed *at least one* document capable of being interpreted as the debtor's security agreement with the creditor and (2) the debtor had knowledge of the existence of *each* other document that is sought to be amalgamated with the document signed by the debtor. From the perspective of protecting the interests of the debtor, it would appear unnecessary to impose an additional requirement that the documents proffered for consolidation give *internal* indication that they are interrelated as parts of the same transaction. That the debtor is a party to the "security agreement" is a fact sufficient to charge him with knowledge of the existence and contents of the documents constituting the entirety of his loan transaction with the creditor.

In contrast, third parties, who by definition are not immediately involved in the loan transaction at issue, cannot automatically be charged with knowing what documents were, or were not, part of the loan transaction in its entirety. Hence, a court mindful of the interests of third parties should apply the "frauds" and evidentiary policies so as to demand that separate documents which are proffered as being a composite shall contain *within their four corners* additional information indicating that the documents are interrelated as parts of the same transaction. Since the enforceability of a security interest relative to third parties is dependent on "notice", rather than knowledge, this *internal* indication of transactional linkage must be sufficient to provide a reasonable third person with sound basis for believing that the documents were tied together as parts of the same transaction.

Other courts do not seem to have been so concerned as we to isolate in express terms the threshold question of which documents may qualify to form a unitary subject-matter purportedly meeting the formal requisites of Section 9–203(1)(b). Yet, we believe that our analysis accounts for differences in the extent to which courts require a showing, from within the four corners of the documents proffered for composite interpretation, that the documents may be regarded as parts of the same transaction.

For example, *Komas v. Small Business Administration, supra,* may be taken as illustrative of the approach holding the "frauds" and evidentiary policy considerations applicable only in relation to the interests of the debtor, as one immediate party to a loan transaction. In *Komas* the court focused on the U.C.C.'s broad definition of "agreement", as signifying the bargain *in fact* made by *the parties.* The court therefore made the interests of the debtor, as an immediate party to such "agreement", the sole frame of reference. Since in *Komas* the debtor had signed *each* of the docu-

ments claimed to constitute a composite, the court saw no need for a further requirement that the documents contain internal indications of being interrelated as parts of the same transaction.

On the other hand, cases such as *In Re Carmichael Enterprises, Inc., supra,* and *In Re Center Auto Parts,* 6 U.C.C.Rep.Serv. 398 (U.S.D.C., C.D.Calif.1968) reveal judicial concern that even where the debtor's signature may appear on each of the documents claimed to constitute a composite, a further threshold condition of the eligibility of the documents to be so regarded is that they provide *internal* indication of interrelationship as parts of the same transaction. In *Carmichael* and *Center Auto Parts* each court found it *sufficient* in this regard that one document expressly referred to the other.

This type of approach suggests an extension of the "frauds" and evidentiary policies beyond the debtor's situation as an immediate party to an "agreement." It is illustrative of the view that since the formal requisites prescribed by Section 9–203(1)(b) are minimally necessary conditions of the *enforceability* of a "security interest" against *anyone,* whether debtor or third party, the policies embodied in those formal requisites are applicable to protect the interests not only of the debtor but also of third parties.

■ Turning to the circumstances of the case at bar, we conclude that we are not presently required to choose between these positions generated by the ambiguity in Comment 5 to Section 9–203(1)(b). Assuming, without deciding, that the policies served by the formal requisites of Section 9–203(1)(b) are applicable to protect third party interests as well as the debtor's, we find that as to Dominique Cloutier, the financing statement he signed qualifies for joinder with the promissory note for the purpose of determining whether the composite they form is Dominique Cloutier's "signed . . . security agreement which contains a description of the collateral . . . ." Dominique Cloutier's signa-

ture on both the promissory note and the financing statement is sufficient to show that he knew of their existence. That Dominique Cloutier was an immediate party to the loan transaction is enough to hold him to knowledge of whether the note and the financing statement signed by him were interrelated parts of that transaction. Thus, the "frauds" and evidentiary policies, as protective of the interests of the debtor, were satisfied.

■ Going beyond Dominique Cloutier as the debtor, on the hypothesis that we should evaluate the policies served by the formal requisites of Section 9–203(1)(b) in relation to the "notice" factors that protect third parties, we find that within their four corners the financing statement and the promissory note contain information giving third parties "notice" of linkage of the note and financing statement as parts of the same transaction. In the financing statement, filed in the office of the Secretary of State and thus serving as notice to third parties, appears the legend: "Date 11/28/75 ." Immediately below this date are the signatures of Dominique Cloutier as "Debtor" and of the Vice-President of Casco-Northern National Bank as "Secured Party." From this information in the financing statement a reasonable third party would have cause to believe that the financing statement was related to a November 28, 1975 loan transaction. Upon the further reasonable inquiry that the law requires of the third party in consequence of the notice provided by the financing statement on file with the Secretary of State, the third party would be led to the promissory note signed by Dominique Cloutier which shows, on its face, that its date is the same as that appearing in the financing statement, November 28, 1975. Thus, despite the absence of an express reference in either document to the other, the documents reveal internally, and therefore consistently with the "frauds" and evidentiary policies, enough to give notice to a third party of their interrelation as parts of the same transaction.[4]

4.  As we previously mentioned, *In Re Carmichael Enterprises, Inc., supra,* and *In Re Center*    *Auto Parts, supra,* held that when one document expressly refers to the other, a *sufficient*

■ With the threshold question as to which documents constitute the matrix for interpretation thus resolved, the meaning conveyed by the promissory note in combination with the financing statement presents no difficulty. Appellant Dominique Cloutier concedes that the contents of the promissory note show it to be a "security agreement" signed by him and that the financing statement contains an adequate description of the collateral. It is plain, then, that these documents, having been shown to meet the requirements for their being treated as a composite, reveal that Dominique Cloutier "signed a security agreement which contains a description of the collateral . . . ."[5]

The sole infirmity in the Bank's relation to him on which appellant Dominique Cloutier bases his claim of conversion is thus dissipated as a matter of law. His appeal from the summary judgment entered on the counterclaim against him must be denied.

■ Addressing the appeal of Carol Cloutier, we conclude that her appeal must be sustained.

We reach this result without need to go beyond the situation of the debtor in investigating the applicability of the "frauds" and evidentiary policies served by the formal requisites of Section 9–203(1)(b). We find that strictly in terms of the interests of Carol Cloutier as the debtor, it would contravene those policies to permit a financing statement she did not sign to qualify, here, as part of an agreement supposedly made by *her* "which contains a description of the collateral . . . ." As shown by our prior analysis, the "frauds" and evidentiary policies, even as confined strictly to the situation of the debtor, demand that *from within the four corners* of the documents proffered to constitute a composite unit it appears *at least* that the debtor had *knowledge* of the existence of *each* of the documents. Here, no showing can be made, without resort to extrinsic evidence, that Carol Cloutier knew of the existence of the financing statement; she had not signed it, and the one document she had signed, the promissory note, made no reference to it.[6]

Hence, we must conclude that the Bank failed to establish as a matter of law that it had a security interest which was *enforceable* against the property of Carol V. Cloutier. The presiding Justice was wrong in ordering summary judgment against her as to the allegations of her amended counterclaim asserting a cause of action for conversion of her property. Her appeal must be

---

manifestation of transactional linkage exists. Neither case, however, holds that such express reference is *minimally necessary* for a showing of transactional linkage.

5. In the case of *In Re Numeric Corp.*, 485 F.2d 1328 (1973) the resolution of the directors of the Numeric Corporation, which the court treated as part of its "security agreement" with its creditors, expressly referred to (by authorizing preparation of) a financing statement " 'to cover . . . [the creditor's] security interest in the property of this corporation . . . and as evidence of his security interest in the same.' " *Id.*, 485 F.2d at 1329. Because of this fact, the decision in *Numeric,* which allowed the financing statement to be joined with the directors' resolution to establish an enforceable security interest, may justifiably be regarded as consistent with the view that the "frauds" and evidentiary policies underlying the formal requisites of Section 9–203(1)(b) have applicable scope to protect the interests not only of the debtor but also of third parties. This would be an *a fortiori* conclusion if the financing statement revealed within its own four corners the

"April 13th" date stated by the court to be the date it was prepared, since April 13th was also the date of the directors' resolution.

On the other hand, it is arguable that the actual reasoning of the court in *Numeric* proceeded on the basis that the policies underlying Section 9–203(1)(b) do not extend beyond the interests of the immediate parties to the security agreement, as indicated by the sentence: "The directors' resolution establishes that *an agreement in fact* existed to give . . . [the creditor] a security interest and *thus fulfills* the Statute of Frauds purpose of the statute." *Id.*, 485 F.2d at 1332.

6. We may mention, too, that even if we were to take cognizance of another document not signed by Carol Cloutier but known by her to exist because she received it, to wit, the bill of sale giving her an ownership interest in the contents of the Winthrop laundromat, the Bank's position would not be advanced. Nothing within this bill of sale indicates that Carol Cloutier knew of the existence of the financing statement.

sustained, the summary judgment against her regarding the conversion cause of action must be set aside and the case must be remanded to the Superior Court for further proceedings as to her on the conversion allegations of her counterclaim.

The entries are:

(1) Appeal of Dominique Cloutier denied; the judgment on the counterclaim against Dominique Cloutier is affirmed.

(2) Appeal of Carol V. Cloutier sustained; the judgment against Carol V. Cloutier as to the conversion cause of action alleged in her counterclaim is set aside; case remanded to the Superior Court for further proceedings as to Carol V. Cloutier on the conversion allegations of her counterclaim.

POMEROY and DELAHANTY, JJ., did not sit.

DUFRESNE, A. R. J., sat by assignment.