Filed 1/28/14  Tough Co. v. Wurlitzer CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| TOUGH COMPANY, INC., | C071157 |
| Plaintiff and Appellant, | (Super. Ct. No. 150886) |
| v. | |
| GEORGE WURLITZER, | |
| Defendant and Respondent. | |

Plaintiff Tough Company, Inc. appeals from a judgment entered in favor of defendant George Wurlitzer after the trial court rejected its assertion that defendant had no right to repossess equipment he sold to plaintiff after plaintiff failed to pay in full.

On appeal, plaintiff contends (1) there was insufficient evidence to support the court's finding defendant retained a security interest in one item of equipment, a bulldozer; and (2) as a matter of law, no security agreement could have been created under the circumstances.  Plaintiff also contends the trial court erred in hearing its new

1

trial motion in the absence of plaintiff's counsel. We find no error, and affirm the judgment.

BACKGROUND

We summarize the facts chiefly from the parties' agreed statement (Cal. Rules of Court, rule 8.134), and the trial court's statement of decision.

Plaintiff's predecessor, Tough Company, LLC, agreed to buy from defendant three pieces of equipment: a 1978 Peterbuilt truck, a 1972 Birmingham 16-wheel trailer, and a Caterpillar D7F bulldozer. The aggregate purchase price for all three was $59,000: $48,000 for the bulldozer, $5,000 for the truck, and $6,000 for the trailer.

The purchase was memorialized by a written bill of sale dated March 1, 2008, and signed by a principal of plaintiff (as "Buyer"), and defendant (as "Seller"). It states: "In consideration of the payment by Tough Company LLC ('Buyer') of the sum of $59,000 the undersigned ('Seller') hereby sells, assigns and transfers to Buyer one CAT D7, Peterbuilt truck & Trailer, serial number [see below]. Said equipment (3) pieces is sold 'AS IS' and 'WHERE IS', without warranty or representation of any kind regarding the condition of the equipment (3) pieces (hereafter known as 'said equipment'), expressed or implied. Buyer agrees that the property is transferred without any warranty, expressed or implied, as to title, merchantability or fitness for use or sale. [¶] Buyer acknowledges and agrees that it has accepted delivery of the said equipment and has assumed all responsibility and risk of loss for the said equipment. Buyer expressly warrants and represents that it has inspected the said equipment, is aware of, and relies solely on its own knowledge of the equipment condition, value, saleability, and useability, and that the said equipment is in satisfactory and conforming condition to the Buyer and fully accounted for. Buyer agrees that the Seller has made no representation, warranty, statement of fact, or expression of opinion regarding the fitness or merchantability of the said equipment. Buyer hereby waives any right it may have to reject the said equipment or revoke its acceptance of the said equipment." Handwritten notations on the bill of sale

2

identify each of the three pieces of equipment by serial or VIN number and, as to the truck and trailer, also by license plate number.

Plaintiff took possession of the equipment without paying the purchase price in full. Title documents respecting the truck and trailer thereafter filed with the Department of Motor Vehicles identified defendant as the lienholder.

Although plaintiff anticipated obtaining a loan soon after the purchase to fund the balance of the price, it failed to do so and a second bill of sale between the parties, dated July 30, 2008, contains the following handwritten notation: "Check #103, $40,000.00. Nonrefundable on said balance of $59,000 and inspection, repair, interest from June 1st. Payable as soon as possible."

Plaintiff did not pay the balance due, and in November 2009, defendant took possession of all three pieces of equipment. Plaintiff then brought the instant action.[1]

The issue at trial was whether defendant had obtained a security interest in the equipment to allow him to repossess the equipment after plaintiff failed to pay in full. Defendant testified the parties intended that he would retain a security interest in all of the equipment until the full purchase price had been paid. Plaintiff did not dispute that defendant retained a security interest in the truck and trailer, but its officers denied they intended defendant would retain a security interest in the bulldozer. Defendant testified he never filed a UCC-1 financing statement or any other document to perfect a security interest in the bulldozer, and the only documents which purport to create a security interest are the two bills of sale.

The trial court found that there was substantial evidence to show that the bulldozer was part of the collateral for the full purchase price of the equipment, and that defendant retained a security interest in the bulldozer until the full, agreed upon price was paid,

---

[1]     The pleadings are not in the record on appeal.

citing California Uniform Commercial Code section 9203.  In its statement of decision, the court explained:  "The parties gave respective values to the truck, trailer, and D7 Cat [bulldozer] from which a reasonable inference can be drawn to show it was intended that the D7 Cat was to be part of the collateral.  If the parties had intended that the D7 Cat was not to be part of the collateral they would have so specified.  Furthermore, they could have adjusted the values to the equipment accordingly.  [¶]  The court finds that until plaintiff paid the full price of the agreement, Mr. Wurlitzer had a vendor's lien (or security interest) in the D7 Cat to which he had a right to foreclose.  Therefore, Mr. Wurlitzer's foreclosure was proper.  [¶]  In conclusion, the plaintiff has failed to meet its burden of proof as to each cause of action."

Plaintiff's motion for a new trial was denied.

DISCUSSION

I

*The Trial Court Did Not Err in Finding a Security Agreement Existed*

Plaintiff contends the trial court erred in finding defendant had a security interest in the bulldozer because, as a matter of law, no security agreement could have been created under the circumstances, and there was insufficient evidence to support its finding defendant retained a security interest in the bulldozer.

When, as here, a trial court's construction of a written agreement is challenged on appeal, the scope and standard of review depend on whether, as here, the trial judge admitted conflicting extrinsic evidence to resolve any ambiguity or uncertainty in the contract.  If extrinsic evidence was admitted, and if that evidence was in conflict, then we apply the substantial evidence rule to the factual findings made by the trial court.  (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165-1166.)  Applying this standard of review, we reject plaintiff's contentions, and shall affirm the judgment.

4

A security interest is an interest in personal property that secures payment or performance of an obligation. (Cal. U. Com. Code, § 1201, subd. (b)(35);[2] see generally, 4 Witkin, Summary of Cal. Law (10th ed. 2005) Secured Transactions in Personal Property, § 36, p. 592.) A "security agreement" is one which "creates or provides for a security interest." (§ 9102, subd. (a)(73).)

Section 9203 provides that a security interest is enforceable "only if each of the following conditions is satisfied: [¶] (1) Value has been given. [¶] (2) The debtor has rights in the collateral . . . [and] [¶] (3) . . . [¶] (A) The debtor has authenticated a security agreement that provides a description of the collateral . . . ." (§ 9203, subd. (b); *Oxford Street Properties, LLC v. Rehabilitation Associates, LLC* (2012) 206 Cal.App.4th 296, 308.) The parties do not dispute that the first two factors are satisfied: value was given, and the debtor -- plaintiff -- had rights in the purported collateral by virtue of the bill of sale which transferred the equipment to plaintiff. The issue remains whether the debtor authenticated a "security agreement" creating a security interest in the equipment.

Nothing in the code requires the debtor to sign a separate, formal document labeled "security agreement" in order to create a valid security interest. (*Komas v. Future Systems, Inc*. (1977) 71 Cal.App.3d 809, 814 (*Komas*).) And, " '[n]o magic words or precise form are necessary to create or provide for a security interest . . . . [Citations.]' " (*In re Amex-Protein Development Corp*. (9th Cir. 1974) 504 F.2d 1056, 1058-1059; *Komas, supra*, 71 Cal.App.3d at p. 816.) Rather, the California Uniform Commercial Code stresses simplicity and flexibility, and documents are to be construed liberally to validate security agreements. (*In re Amex-Protein Development Corp*., *supra*, at p. 1059.) Therefore, " '[a] writing or writings, regardless of label, which adequately describes the collateral, carries the signature of the debtor, and establishes that in fact a

**2** All further statutory references are to the California Uniform Commercial Code unless otherwise stated.

5

security interest was agreed upon, would satisfy both the formal requirements of the statute and the policies behind it.  [Citations.]' " (*Komas,* 71 Cal.App.3d at pp. 814, 816; compare *Needle v. Lasco Industries, Inc.* (1970) 10 Cal.App.3d 1105, 1108 [financing statement did not constitute a security agreement because it did not show debtor's agreement to grant a security interest and does not specify the obligation whose performance is secured].)

In addition, "[t]here is no language in the Commercial Code stating that the terms of the security agreement must be included in a single document.  In fact, under its broad definition of 'agreement,' the code indicates otherwise:  ' "Agreement" means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance . . . .' [Citations.]  Thus, the question is whether the documents presented to the trial court, taken together, showed an agreement between the parties that the creditor would have a security interest in the property." (*Komas, supra*, 71 Cal.App.3d at pp. 814-815.)  In *Komas*, for example, the respondent conceded that "the financing statement, standing alone, did not satisfy the requisites for a security agreement" (*id*. at p. 813), but the trial court found that the financing statement, loan application, promissory note and other documents, taken together, established that there was an agreement by the parties to create or provide for a security interest.  (*Id*. at p. 816; see also *New West Fruit Corp. v. Coastal Berry Corp*. (1991) 1 Cal.App.4th 92, 95-100 [sales and marketing agreement along with evidence of industry trade and custom held sufficient to create security interest].)

Stated another way, the "creation of a valid security interest turns on 'whether the parties intended the transaction to have effect as security' [citations]" (*New West Fruit Corp. v. Coastal Berry Corp*., *supra*, 1 Cal.App.4th at p. 97) and the court may resolve this question by considering together all the documents and circumstances related to the transaction (*Komas, supra*, 71 Cal.App.3d at pp. 814-815) as well as any other evidence

6

presented at the hearing (e.g., *In re Numeric Corp.* (1st Cir. 1973) 485 F.2d 1328, 1331-1332; *New West Fruit Corp. v. Coastal Berry Corp.*, *supra*, 1 Cal.App.4th at pp. 99-100).

With these principles in mind, we conclude the trial court did not err in finding the parties intended the transaction to provide defendant a security interest in the equipment until the purchase price was paid in full.

It is true that the signed bill(s) of sale -- considered alone -- do not expressly state that defendant shall retain a security interest in the equipment until plaintiff paid the purchase price in full. But the California Uniform Commercial Code comment to the current version of section 9203 notes that neither that section's requirement in subdivision (b)(3)(A) (that the "debtor has authenticated a security agreement that provides a description of the collateral"), nor section 9102's definition of a " 'security agreement' " as "an agreement that creates or provides for a security interest," operates as a "reject[ion of] the deeply rooted doctrine that a bill of sale, although absolute in form, may be shown in fact to have been given as security." (Cal. U. Com. Code com., par. 3, West's Ann. Cal. U. Com. Code (2002 ed.) foll. § 9203, p. 171.) Consistent with that "deeply rooted doctrine," defendant testified he believed the bills of sale were given as security.

Other documents related to the transaction *do* reflect the parties' intention to create a security interest: the title documents filed with the Department of Motor Vehicles after the transaction identified defendant as the lienholder for both the truck and trailer, which plaintiff acknowledged. Those title documents reflect the existence of a security interest in those two items. (Cf. *T & O Mobile Homes v. United California Bank* (1985) 40 Cal.3d 441, 447-450.) Taken together, the bill of sale and the title documents indicate the parties intended that a security interest would be created by virtue of the transaction. (Cf. *Komas, supra*, 71 Cal.App.3d at p. 816.) Other evidence adduced at trial further supported that conclusion. Defendant testified the parties intended he would retain a security interest in all of the equipment identified on the bill of sale (including the

bulldozer) until the full purchase price had been paid. The bill of sale executed at the time of the transaction provided a detailed description of all three pieces of equipment, including serial and VIN numbers, which provided information necessary for (among others) any future enforcement of a security interest. (§ 9108, subd. (b)(6).) These elements, taken together, were sufficient to allow the trial court to find that the parties agreed plaintiff could take possession of the equipment without paying for it with the understanding that the equipment would act as collateral for plaintiff's promise to pay and that defendant would therefore have a security interest in all the equipment he agreed to sell to plaintiff, including the bulldozer. (Cf. *Komas*, *supra*, 71 Cal.App.3d at p. 816.)

In so doing, the trial court did not err in considering defendant's trial testimony about the parties' intentions at the time of the transaction. (*New West Fruit Corp. v. Coastal Berry Corp., supra*, 1 Cal.App.4th at pp. 97, 99.) Plaintiff "recognized" the existence of defendant's security interest in the truck and trailer; it challenged only whether the scope of the security interest extended to the bulldozer. In analyzing the scope of a security interest, courts "apply general contractual interpretation principles. '[T]o determine the intended scope of secured obligations we must look to the reasonable expectations of the parties. [Citation.] To this end we utilize general principles governing commercial agreements as well as specific rules pertaining to secured transactions.' [Citation.] Under the California Uniform Commercial Code, an agreement 'means the bargain of the parties in fact, as found in their language or inferred from other circumstances . . . .' [Citation.]" (*Oxford Street Properties, LLC v. Rehabilitation Associates, LLC, supra,* 206 Cal.App.4th at p. 309; *New West Fruit Corp. v. Coastal Berry Corp., supra*, 1 Cal.App.4th at p. 99.) The trial court was entitled to rely upon defendant's testimony concerning the circumstances of the parties' bargain, and to credit his testimony that the parties intended him to retain a security interest in all items of equipment. (*New West Fruit Corp. v. Coastal Berry Corp., supra,* at pp. 95, 99-100 [trial testimony of the plaintiff's president concerning the parties' agreement and similar

8

transactions].)  Indeed, as plaintiff plainly allowed defendant to retain a security interest in the truck and trailer, the two least valuable of the three equipment pieces ($5,000 and $6,000, respectively), it makes little sense it would have excluded the far more expensive bulldozer ($48,000) from an agreement to allow a security interest.

Plaintiff cites *Burlesci v. Petersen* (1998) 68 Cal.App.4th 1062 for the proposition that parole evidence may be introduced to show whether a security interest is intended "only . . . if the party seeking to introduce the parole evidence is the debtor." *Burlesci* does not so hold.  Rather, in *Burlesci*, the appellate court held nonsuit should not have been granted in favor of Petersen's predecessor Cummings after Burlesci presented her evidence because that evidence -- viewed in the light most favorable to her claims -- was sufficient to avoid a nonsuit on all but two causes of action.  (*Id.* at p. 1065.)  In so doing, the court also rejected Cummings's assertion that Burlesci's voluntary delivery of collateral "pursuant to an agreement of any kind is sufficient to create a valid securing interest" in it (*id.* at p. 1067), as Cummings had obtained the collateral by agreeing to "stor[e] the equipment solely as a favor to Burlesci's husband, not as an assertion of his security interest." (*Id*. at p. 1068.)  Plaintiff's lengthy quote from the *Burlesci* opinion, including the statement that " '[m]ore harm than good would result from allowing creditors to establish a secured status by parole evidence after they have neglected the simple formality of obtaining a signed writing' [citation]" (*id*. at p. 1068) is dictum and, because it represents a quote from a California Uniform Commercial Code comment pertaining to a former version of the law no longer in effect, unpersuasive.  (The current version of  § 9203 was added by Stats. 1999, ch. 991, § 35, operative July 1, 2001; amended by Stats. 2006, ch. 254, § 53, eff. Jan. 1, 2007; see 4 Witkin, Summary of Cal. Law, *supra*, §§ 19-21, pp. 580-582.)

9

II

*The Trial Court Did Not Abuse its Discretion in Denying Plaintiff's New Trial Motion*

Plaintiff moved for a new trial on the grounds of accident/surprise, asserting it had no way of anticipating the trial court's reasoning and inadequate damages, in that it should have been awarded damages. It also argued insufficient evidence established the existence of a security agreement or interest, and the judgment was against the law, because parole evidence cannot establish the existence of a security agreement or interest. (Code Civ. Proc., § 657, subds. 3, 5, 6, 7.)

The trial court set the motion for hearing on a particular date; the parties stipulated to continue the hearing to a future date "based upon the availability [of the trial judge] and counsel for the parties," but the matter was never rescheduled. The hearing proceeded on the date originally set for hearing. Plaintiff's counsel did not appear; defendant's counsel did appear. The court denied plaintiff's motion.

Trial courts generally have broad discretion in deciding whether to grant a request for a continuance. (*Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389, 1395.) Plaintiff contends the trial court abused its discretion when it conducted the motion for a new trial "in counsel's absence, despite a stipulation of the parties to continue the hearing so counsel could be present."

We find no abuse of discretion. Although plaintiff's counsel discussed with the court clerk his desire to have his motion for new trial continued to a different date than that set by the court, and sent an informal letter containing his request, he did not file a formal request for a continuance of the hearing until the day before he knew the motion was set for hearing. Under these circumstances, counsel cannot show the court abused its discretion in denying plaintiff's untimely request and proceeding with the hearing on the day scheduled for it to be heard.

DISPOSITION

The judgment is affirmed.  Defendant is awarded costs on appeal.  (Cal. Rules of Court, rule 8,278(a)(1), (2).)

                                          NICHOLSON          , J.


We concur:


      BLEASE          , Acting P. J.


      MAURO          , J.